## TRAVELERS INS. CO. v. NORTON (ANDERSON, Intervener).

### No. 347.

District Court, E. D. Pennsylvania.
Sept. 27, 1939.

J. B. H. Carter and Evans, Bayard & Frick, all of Philadelphia, Pa., for plaintiff.

J. Barton Rettew, Jr., Asst. U. S. Atty., and J. Cullen Ganey, U. S. Atty., both of Philadelphia, Pa., for Norton.

Isaac R. Hirsch and Louis Silverman, both of Philadelphia, Pa., for claimant.

KIRKPATRICK, District Judge.

Anderson, a longshoreman, while at work, sustained an injury to his left ankle. After several hearings he was awarded compensation for permanent partial disability equivalent to the loss of the left foot. Later on, he filed an application for a review of the order, and, after a hearing, the Deputy Commissioner made an order in which he found "that there has been a change in conditions in that there is a greater limitation of motion in the ankle; that there is a mistake in a determination of fact in previous orders in that the disability was determined to be that of the foot only, when actually it was a disability of the left leg," and awarded compensation equivalent to the loss of the leg.

There is no dispute that the foot is entirely useless. It may also be taken as a fact that there is no injury to the leg above a point somewhere between the knee and ankle. It was agreed that when Dr. Moore used the word "leg" he meant the leg below that point, and, from Anderson's testimony, it appears that when he complained of pain in his leg he was referring to that portion of it.

By reason of the injury to his ankle, Anderson cannot now use his leg, and, in that sense, there is evidence to support the Deputy Commissioner's finding that "actually it was a disability of the left leg." This is equivalent to finding that Anderson has suffered a permanent total loss of the use of the leg, and, had the Deputy Commissioner found the fact in those words, that finding could have been sustained just as well. It is also undisputed that if the foot and lower third of the leg were amputated, Anderson "would be in better condition and capable of performing more work than he is at present."

The question involved is what compensation is payable for the permanent total loss of the use of the leg under the conditions stated.

The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 908 (c), Subsec. (18), provides, "Compensation for permanent total loss of use of a member shall be the same as for loss of the member."

The sense of the section is that compensation for loss of the use of a leg is to be-

governed by the same rules and considerations, so far as applicable, as those which govern amputation, because "loss of the member" in this connection can mean only amputation. If it does not mean that, the clause is meaningless. There are only two ways in which a man can "lose" a leg—he may have all or a part of it amputated, or he may suffer an injury which makes it useless. The latter condition is aptly and properly described as the loss "of use of" the leg. There is no third alternative. If the "loss of the member" in Subsec. (18) does not mean amputation, the section would have to read "Compensation for permanent total loss of the use of a member shall be the same as for the loss of the use of the member"—a nonsensical provision.

■ Now, Subsec. (15) of Sec. 908 (c) of the Act defines the compensation payable for two different kinds or degrees of amputation of a leg—one above the knee and the other between the knee and ankle. The framers of the Act no doubt felt, quite reasonably, that the latter (as well as the former) might in popular language be described as the loss of a leg. As a matter of fact, it is not entirely incorrect to say that a man whose leg has been amputated between the knee and ankle has lost his leg. The purpose of Subsec. (15) seems to have been to make sure that amputation of that kind would not be compensated for as loss of a leg.

■■ The two sections are plainly intended to be considered together. Naturally, provisions governing amputations can not be applied literally to disablements in which the disabled member remains attached; but to carry out the intent of the Act, a rule can be stated which may be applied by analogy. It is that the compensation for loss of use of a member shall be fixed, in conformity with Subsec. (15), by the point at which amputation could be made without increasing the disability.

The alternative construction contended for by the defendant would practically abolish any distinction between the permanent total loss of use of a foot and the permanent total loss of the use of a leg, in all cases where amputation was not resorted to. If a foot is so badly injured that it can not be used to stand or walk upon or for any other purpose, it is hard to imagine how the owner can make any use at all of the leg, although it might be perfectly sound and uninjured.

Neither construction is entirely without difficulty, and there are decisions in other jurisdictions both ways. On the whole, however, I think the construction adopted here is more reasonable, and more nearly in accord with the intent of Subsec. (18) of Sec. 908(c).

The motion to dismiss the bill is denied.