146 P.2d 1017

### GONZALES v. PECOS VALLEY PACKING CO. et al.

No. 4804.

Supreme Court of New Mexico.

March 11, 1944.

L. O. Fullen, of Roswell, for appellants.
Frazier & Quantius, of Roswell, for appellee.

BICKLEY, Justice.

Plaintiff workman suffered an industrial injury by accident resulting in the loss by severance of his left arm, his non-dexterous member, between the wrist and elbow. The defendant employer discharged its duty toward the workman during the healing period, acknowledged liability under the compensation schedule (1941 Sts. 57-918) for a period of 130 weeks as for the loss of "One arm between wrist and elbow, nondexterous member," and agreed to furnish plaintiff an artificial member.

The workman, while receiving the payments at regular intervals for a time, became dissatisfied with the allowance, and employed the attorneys who represent him here, to demand and secure an increased compensation. The demand being refused, this action ensued in which the workman claimed compensation as for total disability.

The substance of the trial court's decision, findings of fact and conclusions of

law material to a review, is that the plaintiff was employed at a salary of $18 per week and that while so engaged his left arm was caught in a sausage grinder which he had been operating, with the result that said arm was torn and mangled, necessitating its amputation between elbow and wrist, and also resulting in serious injury to his left shoulder so that the lubricant in the socket of the left arm at the shoulder was greatly diminished, with the result that the plaintiff can only move said arm to a very limited extent without suffering intense pain; that as a result of said injury the plaintiff's ability to obtain and retain permanent employment at a gainful occupation has been very materially decreased, and that he was, at the time of the trial, suffering seventy-five per cent total disability. The court also found:

"That many years prior to the injury sustained while working for the defendant packing company, the plaintiff's right arm, shoulder and hand were injured so that he has difficulty in grasping objects with his right hand for any considerable length of time which, taken with his injuries sustained on September 15, 1942, makes him totally disabled as measured by the standard of being able to obtain and retain gainful employment, but I find that only seventy-five percent of such disability was occasioned by the injury received on September 15, 1942."

The court allowed plaintiff $200 for attorneys' fees.

The court concluded as a matter of law that the plaintiff is entitled to the statutory compensation not to exceed 550 weeks.

The judgment provides that the plaintiff recover from the defendants compensation at the rate of $10.80 per week for a period of 130 weeks on account of the specific injury sustained by him (loss of one arm between wrist and elbow, non-dexterous member) and that after payment for said scheduled injury has been fully made by the defendants, the plaintiff shall thereafter receive permanent partial compensation on the basis of 75% disability at the rate of $8.10 per week for the remaining 420 weeks.

Both parties appealed. The defendants, appellants, contend that there is no substantial evidence which would support a finding of total disability. They also contend that the court's findings that claimant suffered a 75% total disability are too speculative, indefinite and uncertain to support the judgment and are not based on any substantial evidence.

The plaintiff, cross-appellant, presents only one assignment of error, to the effect that the district court erred in not rendering judgment for plaintiff on the basis of permanent and total disability. Plaintiff's theory of the case was stated to the court at the beginning of the trial as follows:

"It is our contention the whole arm is incapacitated up to the shoulder including the shoulder joint and he had other in-

juries some years ago which have practically paralyzed his right shoulder and hand and as a result of this last injury he is totally incapacitated."

Workmen's compensation being of comparatively recent origin, and workmen's compensation laws having been enacted in most of the states employing varying phraseology, it has come about that to many of its interpreters the enactment represented something different. These difficulties are pointed out in the Iowa Law Review, Vol. 28, 1942–43, entitled "Permanent Partial Disability Under the Workmen's Compensation Acts", by Oscar E. Whitebook, a law writer of large experience, in which he says:

"One of the yardsticks which is constantly in use in such legislation is *permanent partial disability*. So often does that yardstick seem to be made of rubber that an attempt to standardize the measure would not seem to be out of place. To ascertain the meaning of the phrase the statutes in the various states must be scrutinized, and the judicial interpretations placed upon such statutes must be examined."

We think that before beginning a discussion of the facts of the case at bar it will be advantageous to scrutinize the portion of our statute which has to do with the "Compensation Schedule" which is found in 1941 Sts., Sec. 57-918. It may be stated broadly that this section sets up a yardstick of total disability (subdiv. a) which embraces presumptive total disability due to the loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof in the absence of conclusive proof to the contrary. Then there is the residuary clause which says that the presumptive total disability shall not be exclusive of other cases of total disability.

Then the section in a distinctly separate portion thereof (b) presents the yardstick for "disability partial in character but permanent in quality" which is commonly referred to in the books as permanent partial disability. This portion of the statute likewise contains specific and residuary clauses. It is said that the permanent partial disability "shall be measured by the extent of such disability." It is then said:

"In the following cases the compensation shall be sixty (60) per cent of the earnings of such workman, subject to the limitations of this act * * * as to the maximum and minimum payments as provided in paragraph (a) of this section. For the loss of: * * *"

Then follows forty-three specific allowances for the loss of the members named. It is then said:

"In all other cases in this class, or where the usefulness of a member of (or) any physical function is permanently impaired, the compensation shall bear such relation to the amounts stated in the above schedule as the disabilities bear to those produced by injuries named in the schedule." (We have inserted "or" parenthetically because

a comparison with previous enactments indicates that this "of" should be "or" although it makes no difference in the case at bar.)

We think the result is that the section provides for compensation embracing:

(1) loss of a scheduled member (by severance).

(2) loss of the use of a scheduled member.

(3) impairment of the use of a scheduled member. (The foregoing, absent other complications, or injuries to non-scheduled member or physical function are to be compensated according to the specific schedule.)

(4) all other cases.

There would thus be embraced injuries not included in the schedule and total disability or permanent partial disability might flow from injuries independent of scheduled injuries or in combination with scheduled injuries, but we think under such a formula the specific scheduled compensation for loss of a member would have to be waived.

Some of the compensation statutes in other states speak of a loss of a member "by severance" and also refer to the total loss of the use of a member as being equivalent to the loss of such member. The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., is cited in Travelers Ins. Co. v. Norton, D.C., 30 F.Supp. 119, 120, as providing:

"Compensation for permanent total loss of use of a member shall be the same as for loss of the member."

The court in discussing the phrase, "loss of the member", said:

"The sense of the section is that compensation for loss of the use of a leg is to be governed by the same rules and considerations, so far as applicable, as those which govern amputation, because 'loss of the member' in this connection can mean only amputation. If it does not mean that, the clause is meaningless. There are only two ways in which a man can 'lose' a leg— he may have all or a part of it amputated, or he may suffer an injury which makes it useless. The latter condition is aptly and properly described as the loss 'of use of' the leg. There is no third alternative. If the 'loss of the member' in Subsec. (18) does not mean amputation, the section would have to read 'Compensation for permanent total loss of the use of a member shall be the same as for the loss of the use of the member'—a nonsensical provision."

We think this is good reasoning. The view that "the loss of" a member means severance or amputation is supported by other considerations. For instance No. 3 and No. 6 in the schedule refer to loss of one arm between the wrist and elbow. That is understandable in connection with amputation and was meant to make the compensation specific for the period of 140 weeks and 130 weeks, respectively, regardless of how far below the elbow the amputation occurred. On the other hand, it

would be difficult to apply the impairment of use clause to a point between the wrist and elbow because the portion of the arm between the wrist and elbow performs no distinct physical function. Furthermore, Sec. 57-919 provides that in all cases where the injury is such as to permit the use of artificial members, the employers shall furnish such artificial members. This apparently applies only in a case where there has been a loss of a member by amputation.

■ We conclude that Sec. 57-918, insofar as concerns the "cases" listed in specific instances 1 to 43, contemplates loss of members by amputation or loss of the use of a member either partially or totally and that the residuary clause "in all other cases" refers to disability resulting from injury to some portion of the body or usefulness of some physical function not mentioned in the schedule.

In the case at bar there was no finding that the accidental injury to the left arm caused any injury to the right arm or to any of the other members of plaintiff's body. A reading of the record indicates that no such finding would be substantially supported.

As heretofore stated, the trial court found that in addition to the loss of the arm between the wrist and elbow by amputation there was an injury to the upper left arm and shoulder and consequent impairment of the use of that member as a result of the accident. The finding falls short of a declaration that the usefulness of the entire left arm is permanently and totally effected. The fact that the plaintiff desires and the court concluded that he is "entitled to an artificial hook or hand to be placed on his left arm" shows that there is a reasonable expectation that the left arm may be of some substantial use and it shows that it is too soon to know definitely whether the plaintiff has suffered a total permanent loss *of the use* of his left arm. Even if it should be assumed that plaintiff had suffered a total and permanent loss of the use of his left arm, in the absence of a showing that the result of the injury by accident was the impairment of any other member or physical function, we would doubtless be held to the specific schedule of loss of members provisions which would lead to an application of No. (4) of the schedule as construed, viz, loss of the use of one arm *at* or near shoulder, non-dexterous member, 160 weeks. This would give plaintiff 30 weeks more than what defendants admit he is entitled to. This speculation is not in the case except by way of argument, because the plaintiff's case does not proceed upon that theory.

Plaintiff's theory is that since the use of his right arm was impaired by a gunshot wound about a quarter of a century before this industrial accident occurred, and an injury to a finger of his right hand occurring before he was shot, total incapacity may properly be predicated upon such a loss to a person who had already been deprived of another member or its use. Appellee and cross-appellant cites an annotation at 67 A.L.R., 794, stating that there is a sharp conflict on this point which de-

pends very largely upon the precise wording of the various provisions of the statute. We find it unnecessary to decide this point. It may be well to observe, however, that at least as to the presumptive total disability arising from the loss of two members, the loss of each member must occur from the same industrial accident, because it is said:

"Provided, that the employer shall not be liable for compensation for total disability if the loss of one (1) arm, foot, leg, or eye occurred prior to such accident, but in that event compensation shall be paid only in accordance with the schedule herein for partial disabilities."

We do not mean to say that a claimant may not waive loss of a member or the use thereof as a ground of recovery in cases where the accident resulted in injury to non-scheduled portions of the body and the functions thereof, and also resulted in injury to scheduled members, and proceed under the residuary clauses for a recovery as for total disability or partial disability in accordance with the facts, but we do not think that he can claim or accept the benefits or awards under the specific schedule and at the same time properly contend that he is entitled to an award for such disability as he may prove under the residuary clause.

In the article of Mr. Whitebook in Iowa Law Review, supra, speaking of specific and residuary clauses, it is said:

"Where the sections are construed to be of equal dignity, it seems that, in holding that the injury is to be compensated under one or the other of the clauses, the judges often have their eye on the amount of the awards under each clause rather than on the injury. *In any event, courts will not award double compensation by permitting a recovery under both clauses where both are applicable."* (Emphasis supplied.)

The writer cites Industrial Comm. of Colorado v. General Accident, Fire & Life Assurance Corp., 71 Colo. 115, 204 P. 338. To this should be added S. C. Weber Iron & Steel Corp. v. Jeffery, 161 Tenn. 142, 29 S.W.2d 656, 658. In that case the court said:

"It seems to us to follow naturally and reasonably that, if a physical injury to the toes has been considered as constituting a proportionate loss of use of the foot, and compensation awarded accordingly, the injured employee has received all to which he is entitled under the statute, and that additional compensation may not be awarded for the loss of the toes. Carried to its logical extreme, the contention of the petitioner would be that, if an arm and hand should be crushed so as to render both useless, and compensation is awarded for the loss of use of the arm, an additional award would be made for the loss of the hand. Obviously, this could not have been intended, since the loss of an arm necessarily includes the loss of the hand. See State ex rel. v. District Court, 129 Minn. 91, 151 N.W. 530; Industrial Commission v. General Accident, etc., Corp., 71 Colo. 115, 204 P. 338."

The Minnesota court in the case cited decided:

"In a hearing under the Workmen's Compensation Act to ascertain the compensation to be awarded to an injured employé, where there are permanent injuries to the hand and arm below the elbow, the court should determine the percentage of total disability of the hand and fix the compensation accordingly. Where the same accident results also in permanent partial disability to the arm above the elbow, the court should determine the percentage of total disability of the arm as a whole, including the forearm and hand, and fix the compensation accordingly. It is improper in such a case to divide the injuries into two units, those to the hand, and those to the arm."

■ So, it may be said in the case at bar that if the loss of plaintiff's left arm contributed to the 75% permanent partial disability found by the court, that award necessarily includes the loss of the left arm between the wrist and elbow.

In Chamberlain v. Bowersock Mills & Power Co., 150 Kan. 934, 96 P.2d 684, 689, 129 A.L.R. 654, cited by appellant, it is said:

"Nor can the loss of a finger for which payment has been made under the schedule be added to the compensation for temporary or permanent disability *for the particular injury of the finger.*"

The same reasoning prevents the loss of the use of the left arm being employed twice; once for specific compensation and again to make up 75% disability for which another compensation is to be paid.

■ In the A.L.R. annotation following this case it is said by the annotator:

"The purpose of provisions of compensation acts that compensation for specific injuries under the acts shall be exclusive of all other compensation is to prevent the pyramiding of compensation."

The present case affords an illustration of pyramiding. The court allows for 75% disability which would require payment of $8.10 per week for 550 weeks. The court allowed also $2.70 per week additional for 130 weeks for loss of arm between wrist and elbow, and required that an artificial hand be furnished the plaintiff.

This illustrates the difficulty in attempting to give the specific clause commonly known as "schedule" clause, a dual operation, so as to compensate for the loss of a member and at the same time employ the specific loss of a member in making up the degree of partial disability under the residuary clause.

■ There may be advantages or disadvantages to claimant in the choice of the course he may choose to take. If he procures an award for permanent partial disability under the residuary clause, he may incur the hazard of subsequent examinations and forced hearings on the demand of the employer and insurer for a revision downward of the award. On the other hand, an award for the loss of a

member ends the case. It seems to us that this presents a field for election by the injured workman and that he cannot eat his cake and have it too.

In Dailey v. Pooley Lumber Co., Iowa, 10 N.W.2d 569, 571, the court said:

"We have first to determine whether appellee's injuries fall within the schedule. If they do, we are not concerned with the question of the extent of disability. The compensation in that event is definitely fixed according to the loss of use of the particular member. The very purpose of the schedule is to make certain the amount of compensation in the case of specific injuries *and to avoid controversies*." (Citing cases.) (Emphasis supplied.)

We think at least in the case of loss of a member by severance with no attendant injuries to other portions of the body, all controversies as to the amount to be paid are avoided. The Iowa court went on to say:

"Permanent total disability, as we have said, may be caused by some scheduled injury, even though no other part of the body except the scheduled member be affected. This may happen because of lack of training, age, or other condition peculiar to the individual. Such injury, though causing permanent total disability, is *arbitrarily* compensable according to the schedule. But where there is injury to some scheduled member and also to parts of the body not included in the schedule, the resultant 'permanent total disability',

if established, is compensable under Code section 1395."

The case at bar is not controlled by our decision in Mathews v. New Mexico Light & Power Co., 46 N.M. 118, 122 P.2d 410, where it appears that the whole body was impaired through infection, pain and suffering as a result of the injury to the leg which caused a total loss of that member and also resulted in injury to unscheduled portions of the body. In that case no claim was made for loss of leg under the schedule.

Nor is the case like Dailey v. Pooley Lumber Co., supra. There, the finding was that in addition to the injury to the hip joint there was a permanent tilting of the pelvis, representing a lowering of the right side of the pelvis and also a compensatory curvature of the lumbar or lower spine due to the changed position of the pelvis. In other words, as the court said, "These are injuries to parts of the body which are no part of the leg." The court concluded that claimant's injury was not within the schedule "Because the actual physical injury extended beyond and outside the scheduled area."

Whether the portion of the shoulder involved in the case at bar is a part of the arm, we do not pretend to say, but the shoulder joint helps to control the arm and that is its principal function. If the shoulder joint performs any other function than to afford articulation of the upper arm therewith, it was not developed at the

trial. With respect to the shoulder injury, the court found in the case at bar that the accident resulted "in serious injury to his left shoulder so that the lubricant in the socket of the left arm at the shoulder was greatly diminished *with the result that the plaintiff can only move said arm to a very limited extent without suffering intense pain.*" (Emphasis supplied)

So it appears that the injury to the plaintiff's shoulder was reflected in his inability to freely and satisfactorily use his left arm. No other detrimental consequences flow from the shoulder injury so far as appears from the findings.

Plaintiff's right arm and hand were not detrimentally affected by the accident except by the lack of the complemental use of the left arm and hand to coordinate with the right in the performance of physical functions. But the legislature, knowing that two arms are better than one in the performance of many tasks, provided what the compensation for the loss of one arm alone in an industrial accident shall be. We cannot enlarge it.

Under the clause erecting presumptive total disability on account of the loss of both arms, etc., the exclusion of the loss of one arm prior to the accident relied upon for the recovery destroys the presumption. Whether this exclusion applies with like force where the claimant is proceeding through the residuary clause without relying on the presumption we do not decide.

We do not mean to say that under some circumstances some impairments of physical functions which occurred prior to the accident relied upon may not be employed in connection with the impairments resulting from the accident so as to add up to total disability as a matter of fact. We simply do not express an opinion on that question. In the case at bar the evidence shows the plaintiff had good use of his right hand and arm, notwithstanding the old injury to them. The right arm remained through the years plaintiff's dexterous arm. The question of whether a workman who brings to his employment some weakness or diseased condition which may be increased or aggravated as a result of an industrial accident is not in the case at bar. However, in a case cited by appellant, American Rolling Mill Co. v. Stevens, 200 Ky. 16, 160 S.W.2d 355, 358, the court was considering the question of just how much of the disability resulted from the accident and how much resulted from the arthritis with which the claimant was afflicted. The court said that it would be difficult to obtain proof which with certainty would show just how much of this disability was attributable to the accident and how much to the disease, and went on to say:

"However, Hon. W. J. Fields, who wrote a full and excellently considered opinion for the Board, gave as the reason for the Board so dividing the disability that the plaintiff had performed satisfactory services for the company for more than twelve

years with loss of but little time due to his arthritic condition, and with such a background it was reasonable to conclude that 75% of his disability resulted from the accident."

Whatever may be the proper rule, we think that when dealing with our statute relating to loss of members that the trial court reached the correct result in eliminating from consideration the impairment, if any, of the right arm, inasmuch as the evidence showed that the plaintiff had always been able to do his work properly and efficiently notwithstanding some periodic discomfort on account of his old gunshot wound in that arm and his handicapped finger on his right hand due to an old injury.

We are not to be understood as attempting an interpretation of the statute as will be a guide in all cases. Each case must be controlled by its own facts.

The record does not contain substantial evidence to support plaintiff's requested finding of fact that plaintiff is totally disabled and therefore the cross-appeal fails.

There is no substantial evidence to sustain the trial court's finding that plaintiff suffered from partial disability to the extent of 75% of total disability.

From all of the foregoing we conclude that the judgment must be reversed and the cause remanded without prejudice to any further proceedings incident to said injury, not inconsistent with the views herein expressed, and without allowance of attorney's fees or costs heretofore accrued against appellants.

It is so ordered.

SADLER, C. J., and MABRY, BRICE, and THREET, JJ., concur.