415 P.2d 356

Gilbert R. JENSEN, Plaintiff-Appellee,

v.

UNITED PERLITE CORPORATION and Saint Paul Fire and Marine Insurance Company, Defendants-Appellants.

No. 7762.

Supreme Court of New Mexico.

June 13, 1966.

Gilbert, White & Gilbert, Santa Fe, for appellants.

Sterling F. Black, Los Alamos, for appellee.

## OPINION

CHAVEZ, Justice.

This is an appeal from the trial court's award under the Workmen's Compensation Act, based on conclusions that claimant-appellee suffered permanent and total disability as a result of an accident arising out of and in the course of his employment by appellant United Perlite Corporation.

Claimant suffered a comminuted fracture of his left arm when he attempted to free a conveyor belt. He was hospitalized for about nine days and wore a cast for approximately four months. He was able to return to work three and one-half weeks after the accident and served in a supervisory capacity for about six months. During his last few weeks on the job, he seemed to "let down" and was eventually discharged for his behavior.

Appellants do not attack the trial court's finding that claimant's left arm has atrophied; that he has ten degrees less rotation of his left forearm when it is lying face down; that the x-rays show there has been a one-quarter inch shortening of the radius; that he has very little strength in his arm or grip; and that claimant has a desensitized area in his left forearm which prevents him from feeling a pin inserted far enough to draw blood. The trial court further found that, since the accident, claimant has suffered from headaches, nervousness, restlessness and sleep-lessness, as well as being very despondent, depressed and tires easily; that claimant suffered none of these symptoms prior to the accident; and that claimant had always been a hard working, conscientious and capable mechanic. Nor do appellants attack that portion of the trial court's finding which states:

"4. The Court finds that in addition to the injury to plaintiff's arm, plaintiff is suffering and will continue to suffer from a severe traumatic neurosis, sometimes otherwise described as post-traumatic neurosis, sometimes described as hysteria. The undisputed facts are that plaintiff's arm has mended well, that there was no nerve damage to the arm, and that the only explanation for his present condition of disability is psychological and mental. * * *"

Appellants contend that the scheduled injury section of our Workmen's Compensation Act (§ 59-10-18.4, N.M.S.A., 1953 Comp.) governs this case. They argue that it is immaterial whether the impairment to claimant's arm, and any disability that naturally flowed therefrom, resulted directly from a physical injury or neurosis. They contend that claimant did not suffer any compensable impairment other than as manifested in and arising out of the left arm.

Appellants direct our attention to Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788, in which claimant suf-

fered an injury to his knee which resulted in a 50% loss of use. Under the testimony, we there concluded that claimant suffered pain in other parts of the body, lost sleep, and that the trouble walking related solely to the injury to the knee. We also concluded that the scheduled injury section of the Workmen's Compensation Act is exclusive, unless there is proof of an impairment to other parts of the body which is separate and distinct from the injury to the scheduled member. In Boggs we held that there was no bodily impairment extending beyond that provided for by the scheduled injury section.

In Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960, cited by appellants, claimant had lost some fingers in an accident and the evidence showed that he suffered pain in his hand, arm and neck, and that he had lost strength in his arm. We held that such pain and suffering is inherent in the type of injury suffered by claimant, and that such pain and suffering cannot be the basis for compensation as a separate claim.

In both Boggs and Sisneros, this court considered bodily reactions which were incident to the injury suffered, and concluded that the legislature had considered such side effects when it set an amount in the scheduled injury section for "the loss or loss of use" of a specific member.

In the instant case, one psychiatrist described claimant's injury as follows:

"A. If this man presently were right in his mind, he should be able to [perform heavy duty mechanic work], but he can't, because he is not right in his mind. He has an attitude toward himself which makes him sick and to be absolutely vulgar, he, in a way, is sick in his head toward himself and because of that he cannot use his left arm."

Another psychiatrist, called by appellants, stated:

"A. It appeared to me, from his description, that not only was he shocked and dismayed at the appearance of his arm and failed to be able to realize that this arm and hand might in time return to approximately the full functioning, but another process, I believe began to set in and that was that this man who had been, since his— the tenth grade, skilled and trained mechanically and who had received the bulk of his self-esteem and self-respect from his manual skills, was now deprived of exercising them for and to the degree to which he had been able to exercise them before, which reduced his self-esteem and reduced his self-respect and he was not able to compensate for this by extending his supervisory abilities, which had been involved in his job, but had obviously not been the course, or the source of the bulk of his self-respect, so that what must have occurred was a failure in adapta-

tion from one kind of situation to another and he discovered that supervision, not only was not his foray, but was not of any particular interest to him and that he could not maintain self-respect on the basis of supervisory activities, being deprived of full participation, or even of significant participation in skillful, mechanic, physical activities."

We do not believe that the mental problem, which claimant incurred in this case, can properly be viewed as a side effect of a fractured arm, and that it is not an incidental injury of the nature noted in the cases cited by appellants.

Appellants argue that the only injury to claimant has been the loss of use of his left arm (aside from "a little stomach trouble and fatigue"), and that, therefore, he is only eligible for compensation based upon the scheduled injury section. Appellants claim that there was insufficient evidence to support the trial court's findings that the injury to claimant caused total and permanent disability.

■ Expert testimony showed that claimant suffered from traumatic neurosis which was directly related to his accident. Such a condition, when directly caused by an accident within the purview of the Workmen's Compensation Act, is compensable. Ross v. Sayers Well Servicing Company, Inc., (filed May 23, 1966), 76 N.M. 321, 414 P.2d 679.

Although there is considerable testimony on the extent of claimant's disability, perhaps the clearest statement on this question came from one of the psychiatrists:

"Q. And Doctor, giving— given your knowledge of this man from your examination and assuming the facts as stated in my previous hypothetical question and assumed therein, has this man, and does he now, suffer from total bodily impairment and general disability?

"A. Yes."

This testimony is substantial evidence upon which a trial court could find that the claimant was totally and permanently disabled.

■■ In Boggs v. D & L Construction Company, supra, we held that the scheduled injury section of the Workmen's Compensation Act is not exclusive when there is proof of a separate and distinct impairment to other parts of the body. See also, Salome v. Eidal Manufacturing Company, 75 N.M. 354, 404 P.2d 308. In the instant case, expert testimony indicates that claimant suffered an injury to his mind, as a result of an accident, which has resulted in total and permanent disability according to the conclusions of the trial court. This is a separate and distinct injury to a part of the body other than his left arm. It is not solely the fact that claimant is unable to use his left arm, which has prevented him

from returning to some type of employment. It appears to be the loss of his self-respect which has caused much of his uselessness. It was entirely proper for the trial court to conclude that claimant was totally and permanently disabled, under the facts and testimony of this case.

This conclusion is in line with Spurlock v. American Automobile Insurance Co., (La.App.1958), 101 So.2d 766, in which claimant sustained an injury to his hand requiring amputation of portions of two fingers. The evidence did not clearly show whether claimant lost the use of his entire hand because of actual physical disability, or because he was convinced that he could not use the hand in any kind of work. The court rejected defendant's contention that claimant should be awarded compensation for two fingers in accordance with the scheduled injury section of the Louisiana Workmen's Compensation Act [LSA–R.S. 23:1221(4) (c)]. In addition, the court modified a lower court's award, based on another portion of the scheduled injury section providing for an award due to the loss of a hand [LSA–R.S. 23:1221(4) (e)]. The court concluded that, whatever the cause, even if post-traumatic neurosis, claimant was no longer able to use his hand and, being a laborer, was totally and permanently disabled.

Lastly, appellants contend that the trial court, by its own admission, viewed the evidence in a manner more favorable to claimant than to appellants. Appellants acknowledge that a similar problem was met in Mascarenas v. Kennedy, 74 N.M. 665, 397 P.2d 312. They argue, however, that the instant case presents a question concerning traumatic neurosis and requires an extra-cautious view of the evidence, and that when the trial court construed the evidence in a manner more favorable to the claimant, it reversed the burden of proof.

In this case, claimant offered expert testimony upon which the trial court could make the findings and conclusions that it made. As in Mascarenas v. Kennedy, supra, it is possible that the trial court might have found facts and made conclusions more favorable to appellants. When considering the trial court's manner of viewing the evidence in this case, we believe that what we said in Mascarenas v. Kennedy, supra, controls:

"* * * we have carefully reviewed the record and are convinced that there is substantial support in the evidence for the findings and conclusions made by the trial court without indulging the liberality of construction complained of. That being true, the fact that there may have been contrary evidence which would have supported a different finding or conclusion does not permit this court, on appeal, to weigh the evidence, * * * or speculate as to what the trial court might have done. * * * And, a judg-

ment will not be reversed even though an erroneous rule may have been applied to the weight to be given the evidence where, as in this case, the evidence substantially supports the findings without applying the erroneous rule. * * *"

The judgment of the trial court is affirmed. Claimant-appellee is allowed the sum of $1,000 as attorney's fees for his representation in this court.

It is so ordered.

CARMODY, C. J., and COMPTON, J., concur.