503 P.2d 652

John Hamilton WITCHER, Plaintiff-Appellant and Cross-Appellee,

v.

CAPITAN DRILLING COMPANY and Chubb/Pacific Indemnity Group, Defendants-Appellees and Cross-Appellants.

No. 923.

Court of Appeals of New Mexico.
Oct. 20, 1972.

James E. Snipes, Sanders & Snipes, Lovington, Lowell Stout, Hobbs, for plaintiff-appellant.

Samuel M. Laughlin, Jr., Girand & Richards, P. A., Hobbs, for cross-appellee.

## OPINION

WOOD, Chief Judge.

The issue in this workmen's compensation case is whether Witcher was entitled to compensation benefits for total disability or was limited to benefits under the scheduled injury section of the compensation law.

The trial court found:

" * * *

"2. On September 27, 1970, while engaged in the course of and within the scope of his employment by the defendant Capitan Drilling Company, plaintiff suffered and sustained an accidental injury to both of his hands, below the wrist, suffering multiple fractures and crushing to both hands.

"3. In 1962, the plaintiff suffered from an arthritic condition in his spine and in 1967, he suffered an accidental injury to his back, chest and left shoulder. After the accident of September 27, 1970, his back was essentially in the same condition as it was before the accident considering the normal progression of the previous injury and trouble.

"4. As a direct result of the accident of September 27, 1970, the plaintiff suffered 75% permanent partial disability to his left hand and 50% permanent partial disability to his right hand. As a result of the combination of the two injuries, he is now totally disabled and wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience.

"5. Because of plaintiff's injury to his hands and the bad condition of his back, as stated in Finding No. 3 herein, when he attempts to use his hands with any appreciable exertion, it puts a strain on his back and causes severe pain in his neck, shoulder and back to the extent that any such use of his hands is limited to short periods of time.

"6. Plaintiff is sixty years of age and has only a fifth grade education. He will not be able to rehabilitate himself in any kind of work for which he is fitted by age, education and training, and the

possibility of training him for any other kind of work is practically nil."

These findings are not challenged. They are the facts before us. Wood v. Citizens Standard Life Insurance Company, 82 N.M. 271, 480 P.2d 161 (1971). The trial court concluded from these facts that Witcher was not entitled to an award for "* * * total or partial disability to the body as a whole;" rather, the award was limited to benefits under § 59–10–18.4, N.M.S.A.1953 (Repl.Vol. 9, pt. 2, Supp.1971). The appeal challenges the correctness of this conclusion.

The injuries to Witcher's hands are scheduled injuries. Section 59–10–18.4, supra. Various decisions of the New Mexico Supreme Court have held "* * * that the scheduled injury section is exclusive unless there is evidence of separate and distinct impairment to other parts of the body in addition to * * * the injury to a scheduled member. * * *" Montoya v. Sanchez, 79 N.M. 564, 446 P.2d 212 (1968) and cases therein cited. Witcher asserts the trial court found a separate and distinct impairment in finding No. 5. Defendants assert no such additional impairment was found; they rely on finding No. 3. We doubt that the findings can be interpreted as finding a bodily impairment distinct from the scheduled injuries. See Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960 (1963); Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788 (1963). However, it is not necessary to interpret the findings.

Both parties requested findings as to impairment distinct from the scheduled injuries. The trial court refused the requests by both parties. If disposition of the appeal turned on whether there was bodily impairment distinct from the scheduled injuries, we would remand the case for an express finding on that issue. Geeslin v. Goodno, Inc., 75 N.M. 174, 402 P.2d 156 (1965); see Tabet Lumber Company v. Chalamidas, 83 N.M. 172, 489 P.2d 885 (Ct.App.1971). However, disposition of the appeal does not require a ruling on the question of distinct impairment.

■ Our holding is that where, as here, there is a total disability, the scheduled injury section does not prohibit compensation based on such disability. Specifically, where in fact there is a total disability, compensation is to be paid for the disability without regard to whether the workman has a bodily impairment distinct from scheduled injuries.

The decisions clearly hold that the scheduled injury section is exclusive absent an impairment distinct from the scheduled injury. It is not clear to us on what basis the holding is reached. Emphasis seems to be given to the wording of the scheduled injury section. Subparagraph A of § 59–10–18.4, supra, states: "For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof. * * *" Enlarging our previous quotation from Montoya v. Sanchez, supra, it reads: "* * * that the scheduled injury section is exclusive unless there is evidence of separate and distinct impairment to other parts of the body *in addition to the disability resulting* from the injury to a scheduled member. * * *" (Our emphasis). See the dissenting opinion in Webb v. Hamilton, 78 N.M. 647, 436 P.2d 507 (1968).

■ We question the correctness of the "exclusiveness" decisions to the extent that they rely on the reference to "disability" in § 59–10–18.4(A), supra. We do so because if "disability" in § 59–10–18.4(A), supra, means the disability defined in §§ 59–10–12.18 and 59–10–12.19, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971) then a workman could suffer the loss of a finger or toe, not be disabled under either §§ 59–10–12.18 or 59–10–12.19, supra, and thus entitled to no compensation benefits for the loss. The internal wording of § 59–10–18.4, supra, suggests to us that "disability" in Subparagraph A means "physical impairment." Compare Subparagraph (A), which refers to "disability," with Subparagraph (B) which does not, and Subparagraph (C) which authorizes compensation in excess of scheduled injury benefits where there is substantial evidence of

"* * * a *partial disability* which will *disable* him longer than the time specified in the foregoing schedule. * * *" (Our emphasis).

In our opinion, the scheduled injury section limits only the benefits payable for "partial disability." It does not limit benefits where there is a "total disability." Legislative history leads us to this result.

Our beginning point is the workmen's compensation law as it existed prior to the legislative enactments in 1957. Laws 1951, ch. 205, § 1 (compiled as § 59–10–18, N.M. S.A.1953 in original vol. 9) dealt with compensation benefits. Subparagraph (a) dealt with benefits for total disability and death. Subparagraph (b) dealt with "disability partial in character." Scheduled injuries were included as a part of Subparagraph (b). Under this law, total disability benefits were not limited by the scheduled injuries because the scheduled injuries applied only to partial disability.

Laws 1957, ch. 246 enacted a new workmen's compensation law. Section 94 of this new law repealed Laws 1951, ch. 205, § 1. The 1957 law established a Workmen's Compensation Commission. It defined "injury," "total disability" and "partial disability." Laws 1957, ch. 246, § 20 stated the indemnity benefits to be paid for an injury causing total disability and for an injury causing partial disability. That section scheduled various injuries and stated that benefits to be paid for the scheduled injuries were "* * * in lieu of indemnity benefits otherwise payable. * * *" Under this law, benefits for scheduled injuries were exclusive, regardless of whether the disability was total or partial. This law was held unconstitutional in State v. Mechem, 63 N.M. 250, 316 P.2d 1069 (1957).

New workmen's compensation provisions were enacted in 1959. Although pertinent sections of this 1959 law have been amended, the relationship between total disability, partial disability and scheduled injuries established by the 1959 law has not been changed. That relationship is that existing prior to the 1957 law. Laws 1959, ch. 67, § 4 defined total and partial disability. The current definitions are compiled as §§ 59–10–12.18 and 12.19, supra. Laws 1959, ch. 67, § 20 defined the benefits payable for total disability. The current definition is compiled as § 59–10–18.2, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971). Laws 1959, ch. 67, § 21 defined the benefits payable for partial disability. The current definition is compiled as § 59–10–18.3, N. M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971). Laws 1959, ch. 67, § 22 pertained to scheduled injuries. The current provision for scheduled injuries is compiled as § 59–10–18.4, supra.

The relationship between the definition of benefits payable for total disability, partial disability and scheduled injuries is the basis for our decision that the scheduled injury section does not limit the benefits payable for a total disability.

Section 59–10–18.2, supra, states: "For total disability the workman shall receive, during the period of that disability, sixty per cent [60%] of his average weekly earnings. * * *"

Section 59–10–18.3, supra, states: "For partial disability the workmen's compensation benefits not specifically provided for in section 59–10–18.4 * * * shall be that percentage of the benefit payable for total disability, as provided in section 59–10–18.2. * * *"

Section 59–10–18.4(A), supra, states: "For disability resulting from an accidental injury to specific body members. * * *"

Each of the three sections are part of the same legislative act. They are to be read together so as to give effect to each of the sections. State v. Thomson, 79 N. M. 748, 449 P.2d 656 (1969). If construction is required, the three sections are to be read "* * * so as to produce a harmonious whole. * * *" Trujillo v. Romero, 82 N.M. 301, 481 P.2d 89 (1971).

The view that the scheduled injury section is exclusive, when in fact there is a total disability, would limit the plain state-

ment in § 59–10–18.2, supra, of benefits that *shall* be paid for total disability. Such a view disregards the express statement in § 59–10–18.3, supra, that limits only *partial disability* benefits when benefits are provided in § 59–10–18.4, supra. Such a view would not give effect to each of the three sections and would not produce an harmonious whole.

Section 59–10–18.3, supra, limits the benefits payable for partial disability when such benefits are specifically provided for in § 59–10–18.4, supra, the scheduled injury section. Sisneros v. Breese Industries, Inc., supra. Section 59–10–18.2, supra, does not contain a parallel limitation on total disability benefits. Instead, § 59–10–18.2, supra, states the benefits which *shall* be paid for total disability; the benefits provided in § 59–10–18.2, supra, are mandatory. Section 1–2–2(I), N.M.S.A.1953 (Repl.Vol. 1). This view gives effect to each of the three sections. The result is that Witcher, being totally disabled by the injuries to his hands, was entitled to total disability benefits. Because of his total disability, § 59–10–18.4, supra, was not applicable. See special concurring opinion in Salome v. Eidal Manufacturing Company, 75 N.M. 354, 404 P.2d 308 (1965).

This result is not contrary to the decisions of the New Mexico Supreme Court. The scheduled injury cases discussing partial disability are not applicable because this case does not involve a partial disability. See Casados v. Montgomery Ward & Co., 78 N.M. 392, 432 P.2d 103 (1967); Salome v. Eidal Manufacturing Company, supra; Sisneros v. Breese Industries, Inc., supra.

In most of the scheduled injury cases involving total disability there was a bodily impairment in addition to the scheduled injury. See Quintana v. Trotz Construction Company, 79 N.M. 109, 440 P.2d 301 (1968); Yanez v. Skousen Construction Company, 78 N.M. 756, 438 P.2d 166 (1968); Webb v. Hamilton, supra; Baker v. Shufflebarger & Associates, Inc., 78 N.M. 642, 436 P.2d 502 (1968); Jensen v. United Perlite Corporation, 76 N.M. 384, 415 P.2d 356 (1966); Hamilton v. Doty, 71 N.M. 422, 379 P.2d 69 (1962). Our fact situation is different; here, there is no finding of impairment in addition to the scheduled injury.

Two decisions reach a contrary result. In Montoya v. Sanchez, supra, and Boggs v. D & L Construction Company, supra, there was a trial court finding of total disability resulting from scheduled injuries. In both cases total disability benefits were reversed by the New Mexico Supreme Court. The opinion in *Boggs*, supra, does not even mention § 59–10–18.2, supra, which pertains to benefits for total disability. *Montoya*, supra, mentions § 59–10–18.-2, supra, but does not discuss it. Neither *Boggs*, supra, nor *Montoya*, supra, discuss the difference in the wording between § 59–10–18.2, supra, and § 59–10–18.3, supra. In our opinion neither Boggs nor Montoya are contrary because neither considered the statutes that, in our opinion, require the result we have reached.

The conclusion that Witcher was not entitled to compensation benefits for total disability is erroneous. The judgment based on that conclusion is reversed. The cause is remanded with directions to set aside the judgment and enter a new conclusion and judgment awarding Witcher total disability benefits.

Witcher is awarded $1500.00 for the services of his attorney in this appeal.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring)

I specially concur in the majority opinion. I desire to point out two matters.

A.  UNCHALLENGED FINDINGS

In affirming this workmen's compensation case, we hold that unchallenged findings are the facts before us. This is established law. For purposes of reversing,

the majority opinion in Ortiz v. Ortiz & Torres Dri-Wall Company, 83 N.M. 452, 493 P.2d 418 (Ct.App.1972), held that failure to specifically challenge findings of fact was only a technical error and could be avoided. I dissented. *Ortiz, supra,* should not be considered valid authority on this point since a writ of certiorari was not sought. This type of judicial writing cannot checkmate the rules of appellate procedure. If we condone error in one case and not in another, judicial stature falls.

## B. SCHEDULED MEMBER INJURIES v. TOTAL AND PARTIAL DISABILITY

Section 59–10–18.4, N.M.S.A.1953 (Repl. Vol. 9, pt. 1) was a new section enacted in 1959. Subsection A reads in part as follows:

> For *disability* resulting from an accidental injury to specific body members *including the loss or loss of use thereof,* the workman shall receive * * * compensation * * * for the following periods: * * * [Emphasis added.]

(a) The word "disability" is not followed by the phrase "as defined in this Act." It is not so limited. Therefore, it does not include in its meaning "total disability" as defined in § 59–10–12.18, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971), or "partial disability" as defined in § 59–10–12.19, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971). The word "disability" simply means "disablement" resulting from an accidental injury.

(b) The "accidental injury to specific body members *including* the loss or loss of use thereof," simply means that the words "accidental injury" *covers* "loss or loss of use thereof." If the workman suffers "loss or loss of use" of a specific body member, he is entitled to scheduled compensation for the number of weeks granted by the section, supra.

"Loss" of a scheduled member means severance or amputation. Gonzales v. Pecos Valley Packing Co., 48 N.M. 185, 146 P.2d 1017 (1944). "Loss of use," although not defined, means that where the total loss of use of a scheduled member causes total disability, it is compensable as such. Mathews v. New Mexico Light and Power Co., 46 N.M. 118, 122 P.2d 410 (1942). When unqualified, "loss of use" has substantially the same meaning as "total loss of use." Travelers Insurance Co. v. Seabolt, 351 S.W.2d 350 (Tex.Civ.App. 1961). "Loss of use" under subsection A, supra, means "total loss of use," because under subsection B, "partial loss of use" is expressed as a degree of "total loss or loss of use."

(c) It is meaningless to analyze the cases from *Mathews, supra,* to Montoya v. Sanchez, 79 N.M. 564, 446 P.2d 212 (1968), to seek a rule for the above subject matter. It is meaningless to play with the wording of § 59–10–18.4, supra. Our duty is to seek a simple solution. It is this:

(1) If substantial evidence shows that the claimant was disabled by reason of an accidental injury which resulted in loss or total loss of use of a specific body member or members, and the trial court so finds, then the claimant is entitled to scheduled compensation for the number of weeks granted.

(2) If substantial evidence shows that the claimant was disabled by reason of an accidental injury which resulted in loss or total loss of use of a specific body member or members by reason of which claimant is wholly unable to perform the usual tasks in the work he is performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience, [§ 59–10–12.18, supra], and the trial court so finds, then the claimant is entitled to "total disability" compensation as set forth in § 59–10–18.2, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971). If Artur Rubinstein, the noted concert pianist, suffers the loss or total loss of use of a finger, he is totally disabled.

By finding No. 4, the trial court found that Witcher was totally disabled. This closed the door against the conclusion that Witcher was entitled to scheduled injury compensation.

(d) We are not concerned in this case with scheduled injuries v. "partial disability" as defined in § 59-10-12.19, supra. But, just as night follows day, the rule applicable to "total disability" would apply to "partial disability."

If the above rules are followed, courts of review will not be confronted with wordy conflicting decisions of the last 30 years.

The word "impairment" should be dropped. It was never used in the Workmen's Compensation Act. "Substantial impairment to his whole body" began with *Mathews,* supra, 1942. This phrase has never been defined. We do not know what "bodily impairment" means because the phrase has been casually changed since 1942 to create a rule to reach a conclusion. "Disability," as defined in the Act, should be the core of the rule and the conclusion.

The word "exclusive," used in the phrase, "that the scheduled injury section is exclusive," in recent decisions, should be dropped. It is also a portion of a rule stated in the majority opinion. The scheduled injury section is not exclusive.

Compensation should be awarded in accordance with the classification of, (1) "disablement," or (2) "disability" as defined by statute, and not on the basis of a judicial rule which separates "disablement" from "disability."