613 P.2d 729

Gary GLOVER, Plaintiff-Appellee,

v.

**SHERMAN POWER TONGS and Employers Casualty Company, Defendants-Appellants.**

No. 4237.

Court of Appeals of New Mexico.

May 29, 1980.

Writ of Certiorari Denied June 20, 1980.

**588**

William G. W. Shoobridge, Neal & Neal, Hobbs, for defendants-appellants.

Brian A. Babington, Glen L. Houston & Associates, Hobbs, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

Defendants appeal a workmen's compensation award entered in favor of plaintiff. We affirm.

In 1976 plaintiff was awarded "25% disability to his dextrous hand" for the statutory period as a result of a workman's compensation suit filed by him in 1975 against defendants. In 1977 he applied for an increase in compensation and for medical benefits, alleging total and permanent disability. The trial court found, in May 1979, that the 1976 award had been paid in full; that plaintiff's 1975 "disability" had become more aggravated and had increased to the point that he was unable to do any work, and that plaintiff had incurred medical expenses for treatment that defendants refused to furnish or authorize. It concluded that plaintiff was totally disabled, and it ordered benefits for 465 weeks plus past and future medical, drug and travel expenses necessary to treatment.

Defendants argue that the following findings in the 1976 judgment precluded reopening of plaintiff's claim for increase in compensation:

1. That the plaintiff suffered an accident while in the course of his employment on April 5, 1975, in Lubbock County, Texas. That plaintiff at the time of the accident was covered under the Workmen's Compensation Act of the State of New Mexico.

2. \* \* \*

3. That the defendants paid to the plaintiff workmen's compensation from the date of the injury through December 6, 1975, at the rate of $75 a week. That the plaintiff returned to work as a caser on August 3, 1975. That since August 3, 1975, to the present time he has been continually employed as a caser insofar as work was available for his particular job classification.

4. \* \* \*

5. That plaintiff is able and has been doing the work of a caser and has lost no working time since August 3, 1975, as a result of his injuries, although plaintiff suffers some non-disabling pain.

6. \* \* \*

7. That the plaintiff at this time has no disability as a result of injuries to his head, neck, and upper and lower back. That the plaintiff does suffer a 25% disability to his dextrous hand.

In its decision on the hearing for increase, the trial court, referring to its 1976 decision, made these pertinent findings and conclusions:

4. The Court further found that plaintiff was able and had been doing the work of a caser and had lost no work since August 3, 1975, to the date of that hearing as a result of his injuries and that plaintiff did suffer some non-disabling pain, but that at that time plaintiff had no disability as a result of the injuries to his head, neck, and upper and lower back.

5. Plaintiff continued to attempt to work and was gainfully employed for a period as a caser; however, he was unable to continue that work and sought lighter work as a security guard in which his employer furnished him a special cushion; and he wore a back brace prescribed by Dr. Hayes and Dr. Breck. He became unable to work on May 1, 1977, and has not been gainfully employed since May 2, 1977. Plaintiff's disability has become more aggravated and has increased without fault of plaintiff so that plaintiff is unable to do any work as defined in the Compensation Act.

\*  \*  \*  \*  \*  \*

1. Judgment should be entered in favor of plaintiff for total disability for the reason that plaintiff's disability has prevented him from earning a livelihood; his disability has become more aggravated and has increased without fault of plaintiff; he has become totally disabled and unable to work.

2. Plaintiff should have judgment against defendants for total and permanent disability benefits, medical examination and treatment expenses, including travel, meals, etc.; such judgment should order the payment of workmen's compensation benefits at the rate of $75.00 per week from May 2, 1977, for a period not to exceed 465 weeks thereafter, or until further order of the Court because of the injuries sustained to plaintiff's back, neck and head, and medical fees to Dr. Breck for $260.00 and future medical expenses, drugs and trip expenses.

\* \* \* \* \* \*

4. The Court found in the original hearing the causal connection between the injuries and pain caused by the accident supported to a medical probability by expert medical testimony; therefore, plaintiff does not have to re-establish such fact in a subsequent hearing for increased compensation and medical benefits.

Defendants rely on *Sena v. Gardner Bridge Co.*, 93 N.M. 358, 600 P.2d 304 (1979), and *American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977) for their argument that Glover's 1975 "disability" terminated with his final payment of entitlement on December 6, 1975; that as of the date of the first judgment, Glover was found to have "no disability . . . to his head, neck, and upper and lower back," but only a 25% disability to his hand for which he had been fully paid at the time the motion to increase was made. They point to language of *Sena, supra,* stating:

We hold that a workman who is not disabled at the time judgment is entered [1975] cannot, thereafter, [in 1977] seek an increase of a non-existent disability. Neither can a non-existent disability re-

vive itself to become partial or total disability.

600 P.2d at 306. And:

A judgment that provides for "payment to the workman, at regular intervals *during the continuance of his disability*" [emphasis in the original] is not a "Final Judgment." [Citation omitted.] Where, however, the judgment does not contain an order for further payments, disability having terminated, the judgment is final."

600 P.2d at 307.

The significance of the "final judgment" language of *Sena* is found in the paragraph following, where the majority said:

The parties, causes of action, subject matter capacities in the 1975 judgment and recovery sought now are identical in all respects. The first judgment is a conclusive bar upon the parties as to every issue which either was or could have been litigated in the previous case.

*Sena* held that one whose disability had "ended" prior to entry of the 1975 judgment could not invoke the provisions of § 52–1–56(A), N.M.S.A. 1978, to reopen the judgment and obtain an increase in the disability benefits awarded by that judgment. The majority of the members of the present panel do not agree with the reasoning or result in *Sena*, and are instead persuaded that the view expressed in Judge Hendley's dissenting opinion is correct. We therefore adopt the dissenting opinion in *Sena*, and expressly hold that except in the rare circumstances of such cases as *Durham v. Gulf Interstate Eng. Co.*, 74 N.M. 277, 393 P.2d 15 (1964), which Judge Hendley noted in his dissent, or others with equally preclusive facts, any judgment for compensation in a workman's compensation case may be reopened during the remainder of the statutory period after the original judgment, for the purpose of requesting an increase or decrease in compensation benefits. This holding is consistent with our decision in *Burton v. Jennings Bros.*, 88 N.M. 95, 537 P.2d 703, *cert. den.*, 88 N.M. 318, 540 P.2d 248 (1975).

Defendant next suggests that *American Tank, supra*, disqualifies plaintiff for reconsideration of his physical condition under § 52–1–56(A). We see nothing in that case which even intimates that one who initially suffers and is compensated for impairment to a scheduled member, without further disability, is thereafter denied the opportunity of reopening his case to show a latent disability arising from the same injury, and to claim entitlement to an adjustment of the earlier award. In *American Tank*, there was both impairment to a specific member *and* total disability. In this case, the total disability simply occurred later than it did in *American Tank*, and we are confident that such a later development is one of the precise reasons inducing the Legislature's enactment of § 52–1–56(A).

The Workman's Compensation Act was not written with the intent that it be so penuriously interpreted that a workman be bound by a "one-shot" chance at showing his ability or inability to perform the tasks of his usual occupation or other work he is fitted by past history to do. If that were so, and each word of the Act were to be read to find a means to deny rather than to grant relief to an injured workman, the principal purpose of workman's compensation law would be thwarted. Workmen's compensation acts are a highly favored and salutary type of proceeding, remedial in nature. *Malone v. Swift Fresh Meats Co.*, 91 N.M. 359, 574 P.2d 283 (1978). The act must be construed liberally to give effect to its *benevolent* purpose. *Casados v. Montgomery Ward & Co.*, 78 N.M. 392, 432 P.2d 103 (1967). Its beneficent purposes are not to be blocked or defeated by hyper-technical refinements of its meaning; rather, liberal construction of the law to effect its purpose is the rule to be applied. *Mascarenas v. Kennedy*, 74 N.M. 665, 397 P.2d 312 (1964). Section 52–1–56(A) was unquestionably intended to meet the effect of changes which could occur in a workman's physical condition, as related to a compensable injury (whether the change be for better or worse), *during the period for which compensation could be paid. Sena, supra*, Hendley, J. dissenting, at 93 N.M. 361, 600

P.2d 307. *American Tank* in no way calls for a different interpretation of the Act, nor does it imply a distinction between "disability" or "impairment" as a basis for granting or denying any rights provided for in the Act. *See Wichter v. Capitan Drilling Co.*, 84 N.M. 369, 503 P.2d 652 (Ct.App. 1972).

The trial court, in its 1979 decision, concluded that a causal connection had been found in the 1976 judgment between the April 1975 injury and the pain that was non-disabling then but which became disabling in 1977; therefore, that that fact need not be reestablished at the 1979 hearing. Such a conclusion is supported by the trial court's Findings 4 and 5. Proof of causation is not a requirement of § 52–1–28(B), that element having been satisfied at the initial hearing in 1976. If causation had not been earlier established, there would be no basis for requesting an *increase or decrease of compensation allowed* in the earlier hearing.

Moreover, Dr. Breck's testimony, produced at the hearing for increase, sufficiently established that Glover's initial disability had been aggravated; Glover's evidence adequately fulfilled the requirements of inability to work and freedom from fault.

The award of increased disability from May 2, 1977 finding ample support in the evidence, it follows that payment of medical expenses incurred for treatment of the disability is mandated by § 52–1–49. The evidence of plaintiff's indebtedness to Dr. Breck was received without objection, and *Scott v. Transwestern Tankers, Inc.*, 73 N.M. 219, 387 P.2d 327 (1963), approves the rule that proof of a bill for medical services rendered is prima facie proof of reasonableness. The court did not err in ordering its payment by defendants.

The judgment below is affirmed. Plaintiff is awarded $2,000 for services of his counsel on this appeal.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., concurs in result only.

SUTIN, Judge (concurring in result only).

I concur in the result only.

This is a workmen's compensation case in which the trial court increased compensation and ordered payment for medical benefits. The court found that plaintiff's disability had become more aggravated and had increased without fault from 25 percent disability to the hand to total disability. Defendants appeal. We affirm.

In the original trial held, the trial court found that plaintiff, at that time, had no disability as a result of injuries to his head, neck and upper and lower back. In other words, plaintiff suffered injuries to his head, neck and upper and lower back but the injuries suffered were not sufficient to constitute a disability. Plaintiff did suffer a 25 percent permanent partial disability to his dextrous hand (skillful and competent with this hand). The court concluded that judgment be entered in favor of plaintiff for 25 percent disability of plaintiff's dextrous hand for the statutory period; that pain alone, which did not interfere with or prevent adequate performance, was not compensable.

A year later, plaintiff filed an application to increase compensation and pay for medical benefits. After hearing, the court found:

\* \* \* \* \* \*

5. Plaintiff continued to attempt to work and was gainfully employed for a period as a caser [casing oil field work]; however, he was unable to continue that work and sought lighter work as a security guard in which his employer furnished him a special cushion; and he wore a back brace prescribed by Dr. Hayes and Dr. Breck. He became unable to work on May 1, 1977, and has not been gainfully employed since May 2, 1977. Plaintiff's disability has become more aggravated and has increased without fault of plaintiff so that plaintiff is unable to do any work as defined in the Compensation Act.

Section 52–1–56(A), N.M.S.A.1978 allows a workman to seek an increase in compensation "if it shall appear . . . that the disability of the workman . . . has increased . . . ." Plaintiff's disability was increased from 25 percent permanent partial disability of the dextrous hand to total disability of the body as a whole.

Two questions for decision arise:

(1) Can a permanent partial disability to a specific body member be increased to total disability of the body as a whole?

(2) Is the evidence sufficient to warrant a finding of such total disability?

The answer to both questions is "yes."

A. *Plaintiff's permanent partial disability of the hand can be increased to total bodily disability.*

Increase of the "disability of a workman," as stated in § 52–1–56(A), is broad and expansive in scope. It is not limited to total or partial disability as defined in §§ 52–1–24 and 52–1–25. It includes "disability resulting from an accidental injury to specific body members including the loss or use thereof." Section 52–1–43(A), subsection 7 of which covers "one hand, dextrous member . . . 125 weeks." Nothing in the phrase "disability of a workman" indicates that an increase in compensation is limited to total disability of the hand alone. While disability of the hand continues, and a final judgment has not been entered, facts and circumstances which occur during the interim period may so affect the body as a whole as to leave the realm of a scheduled injury and enter the land of total and partial disability of the body as a whole. When this occurs, it naturally follows that plaintiff can seek an increase in compensation. To reach the goal of total disability, the evidence must meet the two prong test set forth in *Medina v. Zia Company*, 88 N.M. 615, 544 P.2d 1180 (Ct.App. 1975).

Defendants contend that a disability increase cannot occur because the initial judgment established a non-existent disability and that a non-existent disability may not revive itself to become a total disability. Defendants rely on *Sena v. Gardner Bridge Co.*, 93 N.M. 358, 600 P.2d 304 (1979) and *Am. Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977).

*Sena* involves an initial judgment wherein plaintiff was held to one week of compensation. Disability had ended one year before judgment was entered. The judgment entered was a *final* judgment. A year later, plaintiff sought an increase in compensation. The court said:

> . . . We hold that a workman who is not disabled *at the time judgment is entered* cannot, thereafter, seek an increase of a non-existent disability. Neither can a non-existent disability revive itself to become partial or total disability. [Emphasis added.] [600 P.2d 306.]

In the instant case, at the time judgment was entered, plaintiff suffered a 25 percent permanent partial disability of a dextrous hand with continued payment of compensation benefits. The judgment entered was not a *final* judgment. *Sena* is not applicable.

*American Tank* created a far reaching innovation in the Workmen's Compensation Act. The court said:

> If one suffers a scheduled injury which causes *a physical impairment but does not create disability,* [§ 52–1–43(A)] . . . will apply. When the impairment amounts to a disability, [§§ 52–1–24, 52–1–25] . . . are properly involved. [Emphasis added.] [90 N.M. 515, 565 P.2d 1032.]

In other words, the term "disability" has been deleted from § 52–1–43(A), the scheduled injury statute, and "physical impairment" substituted therefor. This is to say that when the court below found plaintiff to be 25 percent permanently, partially disabled in his dextrous hand, the court should have said plaintiff was "physically impaired" to that extent.

Therefore, defendants argue that in the initial judgment "[t]he court found specifically an impairment without a disability." If there was no "disability" under the scheduled injury statute, then, defendants say, a non-existent disability cannot revive itself to become total disability. However, to translate "25 percent disability to the hand" to mean "an impairment without disability" is a crochet that moiling judges can perceive.

We agree with plaintiff that the substitution of "physical impairment" for "disability" is unfortunate unless those terms are synonymous or interchangeable.

As heretofore pointed out, "impairment" has never appeared in the Workmen's Compensation Act and has never been defined in New Mexico. *Witcher v. Capitan Drilling Company,* 84 N.M. 369, 503 P.2d 652 (Ct.App.1972), Sutin, J., specially concurring. Nevertheless, in overruling many prior decisions, *American Tank* approved *Witcher.* In *Witcher,* the court said:

> The internal wording of . . . [§ 52–1–43(A)] [injury to specific body member] suggests to us that *"disability" in Subparagraph A means "physical impairment."* . . . [Emphasis added.] [84 N.M. 371, 503 P.2d 654]

If "disability" means "physical impairment" then these terms are interchangeable. The Supreme Court did not mean that if the district court mistakenly used the word "disability" instead of "physical impairment," a workman cannot seek an increase in compensation; that "physical impairment" is excluded from use of the words "disability of a workman"; that "physical impairment" cannot increase. All that the Supreme Court intended was to distinguish "disability" as it relates to a scheduled injury, and "disability" as it relates to total and partial disability.

The purpose of this distinction was to broaden the meaning of the scheduled injury statute so that a workman may seek compensation benefits for total permanent disability when disability arises from injuries to a specific body member.

Rather than attempt the arduous task of defining "physical impairment," we hold that in the scheduled injury statute, "physical impairment" and "disability" are synonymous.

In *Fuchs v. Old Line Life Ins. Co.,* 46 Wis.2d 67, 174 N.W.2d 273, 276 (1970), by use of the dictionary, the court defined "physical impairment" as follows:

Giving "physical impairment" the ordinary meaning as used in common speech, the term denotes a defect or infirmity limiting or making useless a member or limb of the body. . . .

This definition is an equivalent of "disability" or "disablement" or "incapacity."

We hold that plaintiff's "physical impairment" to his dextrous hand can be increased to total bodily disability.

B. *The evidence presented shows total disability.*

Defendants argue that "[t]here is nothing in the record to indicate that the plaintiff's condition had become more aggravated or had increased without fault of the plaintiff," as found in finding no. 5, *supra*.

We have carefully read the testimony of plaintiff and Dr. Louis W. Breck, an Orthopedist of renown in Texas and New Mexico.

This testimony established the two prong test set forth in *Medina*. Dr. Breck said plaintiff could not perform the work he was doing at the time of injury and plaintiff testified he was not fit to perform any work. Plaintiff's own testimony can establish the extent of disability. *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978); *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct. App.1977). Defendants rely upon the report of their doctor that plaintiff was not disabled in either respect. However, "[t]he testimony of the injured employee with respect to the extent of his disability may be accepted over the testimony of medical experts." *Gregory Company v. Durdin*, 537 S.W.2d 701, 703 (Tenn.1976). Plaintiff is now totally disabled until the further order of the court.

Defendants' final argument revolves around § 52–1–28(B) which reads:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based upon speculation or on expert testimony that as a medical possibility the causal connection exists.

Defendants say "there is no evidence in the record to show that the plaintiff's alleged increase . . . was in terms of reasonable medical probability caused by the original accident." "Reasonable medical probability" is confined to the initial judgment of a workman seeking compensation benefits, not to a judgment arising out of an increase in the amount of compensation. Section 52–1–56(A) says the court may award "an increase in the amount of compensation allowable as the facts may warrant." "As the facts may warrant" is directed to "an increase in the amount of compensation." It is not directed to medical causation. Medical causation was determined in the initial trial. If not, compensation would not have been awarded by the court and paid by defendants. Section 52–1–28(B) is not applicable to claims for increased compensation.

Reference is made to the following language in *Sena* :

If plaintiff believes that he can show a causal connection between the accidental injury and subsequent surgery, plaintiff may, perhaps, have a remedy by seeking relief from the judgment. [600 P.2d 307.]

This reference was directed to a revival of disability not to an increase of the disability.

Interspersed in the argument is the claim that "[t]here is no testimony in the record to indicate that the alleged increase of the . . . disability has become more aggravated *or* has increased without fault of the plaintiff," as required by § 52–1–56. This requirement is in the alternative. Dr. Breck's testimony adequately satisfied the matter of aggravation of the disability. Whether "without fault of the plaintiff" is shown is not essential to recovery of increased compensation.

Defendants seek to deny plaintiff the right to recover $260.00 for services rendered by Dr. Breck. Without objection, plaintiff testified that he owed Dr. Breck $260.00 for treatment in connection with his injury. The court so found. Dr. Breck did not testify as to his "bill," nor was one

offered in evidence. This is the first time a workman sought to recover a medical expense by the amount he owed the doctor. In New Mexico, proof of a bill from a doctor for services rendered is sufficient as prima facie proof of reasonableness. *Scott v. Transwestern Tankers, Inc.*, 73 N.M. 219, 387 P.2d 327 (1963). A debt owed to a doctor is equivalent to a bill received from the doctor that is due and owing. We do not commend this method of proof but we hold it sufficient where no objection is made, no request for the bill is made, and no cross-examination is undertaken to test the foundation of the statement made.