432 P.2d 103

**Joe CASADOS, Plaintiff-Appellee,**

v.

**MONTGOMERY WARD & CO., Incorporated,
Defendant-Appellant.**

No. 8270.

Supreme Court of New Mexico.

Sept. 25, 1967.

Robert S. Skinner, Raton, for appellant.

Wright & Kastler, Raton, for appellee.

OPINION

CASWELL S. NEAL, District Judge.

This case was filed in the District Court of Colfax County, New Mexico, to recover benefits under workmen's compensation. The trial court rendered judgment for plaintiff Casados for 50% partial permanent disability to his body as a whole from August 26, 1965, plus medical expenses and expert witness fees. The employer appeals.

The sole question on appeal involves the question of whether the injury to the appellee is limited to a scheduled injury to the foot at the ankle, or should be affirmed as to the holding of a partial permanent disability to his body as a whole.

The trial court made, among others, the following findings of fact:

"6. The injury to the lower left leg and ankle of the plaintiff is permanent in nature, and is not limited to the leg extremity of the body. The effects of the injury to the lower left leg and ankle extend to and impair the back and body of the plaintiff.

"7. The injury to the lower left leg and ankle of the plaintiff interfere with the efficiency of the entire body of the plaintiff and results in an impairment, restriction, and limitation of use and motion of the back of the plaintiff. There is, arising directly out of a specific injury to the lower left leg and ankle of the plaintiff, a distinct and separate impairment of the body as a whole.

"8. The plaintiff is thirty-nine (39) years of age, went to school through the seventh grade, has had no specific training other than on-the-job experience, and is limited in work ability to those jobs requiring heavy manual labor and a constant and efficient use of his legs in a non-impairing relationship to the rest of his body.

"9. Considering the factors in paragraph 8 of these Findings, the Plaintiff's general physical and mental capacities and his previous work experience, the plaintiff has a permanent partial disability to the body as a whole to the extent of 50%.

"10. The plaintiff is unable, to the extent of 50%, to perform the usual tasks in the work he was performing at the time of his injury and is unable, to the extent of 50%, to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

"11. The fifty percent (50%) bodily disability of the plaintiff commenced with the 26th day of August, 1965, and was from that date a permanent disability to such percentage extent."

If there is substantial evidence to sustain these findings of fact, the judgment should be affirmed. On the other hand, if the injury and resulting disability should be confined to the specific body member involved, the judgment should be reversed.

Prior to 1963, the term, "partial disability" was defined by statute, as follows:

" 'Partial Disability' means a reduction in, but not an entire loss of, a workman's wage earning ability due to an injury suffered by accident arising out of, and in the course of, his employment."

This definition was changed by Sec. 1, ch. 269, Laws 1963, to read as follows:

" '[P]artial disability' means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience."

This definition is applicable to the injury here involved, which occurred in September, 1964.

At the time of plaintiff's accident, he was working for the defendant in its Raton tire shop. While engaged in stacking tires, he lost his balance and fell, breaking his foot. He was treated by a local doctor several months, and then was sent to an orthopedic specialist, Dr. Norman of Pueblo, Colorado. After some time, an operation called a triple arthrodesis, which amounted to a fusion of three bones in the heel, was performed. After several months of healing and about a year after the injury, plaintiff was released from care by Dr. Norman, whose diagnosis was 60% permanent loss of function of the lower left extremity, measured at the ankle.

At the time of plaintiff's injury, he was 39 years of age. He had a seventh-grade education. As a boy, he had herded sheep with his father. He served overseas in the Army for about three years. He then was employed in the construction business as a common laborer, doing heavy work such as hauling cement in a wheelbarrow. He then worked as a common laborer in the sugar beet fields of Colorado, and later served three years on the Raton police force. In 1950, he went to work as a mechanic's helper in an ordnance depot, carrying tools, jacking up trucks and working as a laborer. He went back on the police force in Raton, and left the police force in 1964 to work for Wells-Fargo, driving 25-ton trucks, hauling coal. Following this, he worked for Pendleton Oil and Gas Company, installing furnaces, which involved heavy lifting and labor. He then went to work for Montgomery Ward & Co. This work also involved heavy lifting. He had worked for Montgomery Ward about a week when the accident complained of occurred. His foot was broken, his wrist injured and his hip cut. There is ample evidence that for about a year he was unable to perform work of the type he was trained to do involving the use of his legs, feet, and in bending, walking or standing on his feet. In attempting to walk, after working for an hour or two, he could stand the pain no longer. His back pained be-

tween the hips, and his foot would swell, requiring the use of crutches. He lost sleep because of pain in both his feet and back. The pain extended to the top of his foot, the leg and back. His back would become rigid and stiff. He could not straighten up after bending. He limped perceptibly. He can do very little walking; he cannot climb ladders or squat. According to his immediate supervisor, appellee is not the type to complain of pain. He was given light work to "carry on" so that the pain would not be too severe.

The plaintiff was examined by Dr. Sidney Schultz, an orthopedic specialist of unquestioned ability. The doctor's findings were in detail and specifically explained why, in the doctor's opinion, the plaintiff's over-all efficiency was seriously affected. This clearly appears from the following quotation from the doctor's testimony:

"* * * I would not rate him (referring to claimant) as a percentage of the foot, or ankle, or leg, because of the fact that he does have, I feel, bona fide lowback complaint, and as I said, I would give this man a permanent partial disability of fifty percent of the body as a whole."

The doctor also testified that not every injury to the foot results in disability to the body as a whole, but that it is only in those injuries where there is a residual impairment affecting the body, or which extends to or impairs other parts of the body that there is such a disability.

It is quite apparent that this testimony is sufficient to sustain the findings and conclusions of the trial court.

It is unnecessary to review the decisions in other jurisdictions upon the question involved. It seems established in New Mexico that the scheduled injury section of the statute (59–10–18.4, N.M.S.A. 1953) is exclusive, unless there is evidence of a separate and distinct impairment of other parts of the body than the disability resulting to the scheduled member. Boggs v. D & L Construction Co., 71 N.M. 502, 379 P.2d 788. Of course, when this decision was entered, the definition of "Partial Disability" had not been amended, and Sec. 4, Ch. 67, Laws 1959, was in effect. The court also held that in that case there was no proof of any disability other than the scheduled disability.

It is likewise the law that where an injury to a scheduled member extends to and impairs other parts of the body, compensation is not limited to the scheduled member. Gonzales v. Gackle Drilling Co., 70 N.M. 131, 371 P.2d 605.

In Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960, the only evidence of any disability was to the scheduled member, namely, the finger. The decision followed the Boggs case.

It would seem that the case of Salome v. Eidal Mfg. Co., 75 N.M. 354, 404 P.2d 308, is also controlling in this case. There, the injury was to a foot, as here. There was medical evidence from the same Dr. Schultz, who testified in this case, that the foot injury had caused general bodily impairment and disability. The trial court's finding to that effect was sustained by the appellate court. This view is sustained by textbook law. 2 Larson's Workmen's Compensation Law, Sec. 58.20.

It is, of course the duty of this court to construe the compensation act liberally to give effect to its benevolent purpose and to construe the findings of the court liberally so as to support the judgment. Plains White Truck Co. v. Steele, 75 N.M. 1, 399 P.2d 642.

Finding no error, the judgment is affirmed. The sum of $750.00 will be allowed to appellee for the services of his attorney in representing him in this court.

It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.