438 P.2d 166

**Patricio YANEZ, Plaintiff-Appellant,**

**v.**

**SKOUSEN CONSTRUCTION COMPANY and Mountain States Mutual Casualty Company, Defendants-Appellees.**

**No. 8326.**

Supreme Court of New Mexico.

March 4, 1968.

William J. Heck, Hobbs, for appellant.
Ray Hughes, Deming, for appellees.

OPINION

EDWARD E. TRIVIZ, District Judge.

In this appeal of a workmen's compensation case, plaintiff-appellant complains that the trial court erred in limiting his recovery to the leg as a scheduled member rather than extending the disability to the body as a whole. Finding "that after this action was filed, that is on or about November 8, 1965, the plaintiff was again examined medically, and his residual disability re-evaluated due to the pain of which he complained, an overgrowth of bone in the upper end of the femur and on the ilium and the fractured femur which was well healed, and this re-evaluation was thirty-five per cent disability of his right leg, but that the overgrowth of bone could be surgically removed by a safe operation, which is not serious nor dangerous to life or health, with some reasonable prospect of relief from the continuing pain and the increased disability," the trial court concluded (No. 4) "that the plaintiff's disability for which he is entitled to compensation is to the right leg as a scheduled member under the Workmen's Compensation Act and not to his body as a whole," and awarded thirty-five per cent permanent partial disability of such leg for a total of 150 weeks.

This conclusion plaintiff-appellant challenges on the ground that under the evidence and the case of Salome v. Eidal Manufacturing Company, 75 N.M. 354, 404 P.2d 308, the only proper result would have been an award based upon a percentage of

disability to the body as a whole; and the defendants-appellees maintain "that the big difference between the facts of the instant case and those of the Salome case, supra, is that this overgrowth of bone could be surgically removed by a safe operation, not serious nor dangerous to life or health, with reasonable expectation of relieving his pain and improving his condition and also which treatment was recommended and offered to him by both Dr. Mario Palafox (appellant's witness) and Dr. Oren H. Ellis (appellee's witness) but refused by appellant;" so that by taking into consideration such refusal, the trial court—so appellees maintain—correctly limited the effects and recovery to the leg.

A summary of the uncontroverted facts would indicate that the plaintiff had prior service as a truck driver, welder, and auto mechanic; three years education; he was forty-six years old (having been born in Mexico), and in relatively good health at the time of the accident of June 13, 1963, in Silver City, New Mexico. He was injured while working for defendant-employer as a truck driver by being struck by a loader that pinned him against a truck as he was tying a chain on its front end. From this accident he sustained a compound fracture of the shaft of the right femur as well as lacerations and contusions to the right inguinal and thigh areas. The fracture was set by surgical reduction with a metal rod inserted into the femur. Although this rod was later removed, yet during the time that the rod was in place it would strike the soft tissue of the buttocks causing bursitis, and on account of the pain, plaintiff developed a pattern of gait, limp or lurch to the right to reduce the strain and stress in the muscles of the hip. Examinations disclosed he had a limited range of hip motion. Defendants-appellees' witness, Dr. Oren H. Ellis, an orthopedist, testified that he and Dr. Mario Palafox, the plaintiff's medical expert and orthopedist, agreed as to the benefits to be derived from surgery for the removal of the bony overgrowth. Dr. Ellis said, "I suggested that the large build up of bone can be removed surgically * * * with the purpose being to increase the range of motion of the hip and give the patient less discomfort." In this connection, Dr. Palafox testified:

"You can remove the bony growth, the ossificare [sic], the name of the condition, you can take out the piece of bone *but the stiffness remains.* It is possible you might get more motion in the hip but I do not believe that the stiffness is limited to one area. *That involves the whole capsule, thus producing the stiffness."* (Emphasis supplied.)

On his last examination, Dr. Ellis observed:

*"He walks very slowly with a deviation of his trunk over the right hip during the stance phase * * *  he shows active flexion of the right hip of ninety degrees, passive to one hundred twenty degrees; extension, zero; abduction, twenty-five; adduction, twenty passively; external rotation, twenty degrees and internal rotation fifteen degrees. * * *"* (Emphasis supplied.)

Uncontroverted medical evidence reflects that the plaintiff has pain and limitation of range of motion of the hip and further that he is impaired in functions requiring lifting, bending, stooping or getting down on all fours.

The indicated finding (No. 11) of the trial court refers to the overgrowth of bone in the upper end of the femur and on the ilium. This bony overgrowth resulted from the injury attributable to the accident. Since there is no evidence to the contrary, the overgrowth of bone involves disability to the hip and beyond the leg; and in concluding otherwise, the challenged finding and conclusion cannot be supported. The trial court's conclusion (No. 7) also specifically refers to the bony overgrowth in the hip bone. To say the least there appears to be a conflict between the conclusion (No. 4) of the trial court limiting disability to the right leg and the trial court's finding (No. 11) which says there is an overgrowth on the ilium (hip) and the conclusion (No.

7) wherein it is stated that the bony overgrowth is on the hip bone. This conflict in itself would require a reversal and remand so the uncertainty could be cleared up and recovery based on such a clarified determination. See Baker v. Shufflebarger and Associates, Inc., 77 N.M. 50, 419 P.2d 250; Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95.

It is evident that the present limitations, involving restricted range of motion of the hip, lurch to the right and disability in functions involving lifting, bending, stooping, climbing, and resulting at least in part from the bony growth in the hip bone, impair and interfere with the efficiency of the body as a whole. As a matter of fact, the evidence reflects that by virtue of such impairment the plaintiff is unable to perform the type of work for which he is suited by training, experience, and education. See Casados v. Montgomery Ward & Co., Inc., 78 N.M. 392, 432 P.2d 103 (1967).

So under this posture, then controlling here is Salome v. Eidal Manufacturing Co., supra, wherein this court said (at 75 N.M. 355, 356, 404 P.2d at 309):

"It is well established that the scheduled injury section is exclusive unless there is evidence of separate and distinct impairment to other parts of the body in addition to the disability resulting from the injury to a scheduled member. Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788. But the converse of the rule is noted. *When the effects of an injury to a scheduled member extend to and impair other parts of the body,* compensation is not limited to that provided by statute for loss of the scheduled member or the loss of use thereof. Gonzales v. Gackle Drilling Company, 70 N.M. 131, 371 P.2d 605. Also see 2 Larson's Workmen's Compensation Law, § 58.20, and we quote in part therefrom:

" 'The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg.' " (Emphasis supplied.)

In the Salome case, as here, the injury to a given member (the right foot) caused pain, tilting of the weight of the body, a definite limp, and a general bodily impairment, although attributable to the given member. Here there is evidence of continued pain in the right hip and groin, limitation of range of hip motion, and a definite compensating lurch and because of the over-all impairment or limitations, inability to obtain and retain work involving bending, stooping, climbing, or lifting and requiring rehabilitation for some type of work not involving strong physical activity.

We see nothing in Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788, or in Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960, relied on by appellees, that conflicts with our holding here. Those cases do not support a conclusion that an award on the basis of over-all bodily disability is not proper where, as here, evidence is present of impairment to other parts of the body in addition to the scheduled member. Compare Webb v. Hamilton, 78 N.M. 647, 436 P.2d 507, and Baker v. Shufflebarger, 78 N.M. 642, 436 P.2d 502, both decided January 22, 1968.

From the foregoing, it is apparent that the only error of the court arose because of its failure to conclude that disability was present, as a result of the injury, over and beyond that suffered to the leg as found by the court. The adverse effect of this to appellant would only arise if the recommended surgery is performed without relief therefrom. The court did not err in directing that if appellant agreed, defendants should furnish the operation,

**760**

and in retaining jurisdiction to increase compensation payments if justified after the results of the surgery could be appraised. Such an order is provided for in § 59–10–20, N.M.S.A.1953. See Fowler v. W. G. Construction Co., 51 N.M. 441, 188 P.2d 160 (1948). Otherwise, after submitting to surgery, if no relief resulted, appellant would undoubtedly encounter difficulty in supporting a grant of compensation for disability resulting from the condition of the hip bone as found by the court.

Accordingly, the cause is remanded to the district court with instructions to proceed in a manner consistent herewith.

It is so ordered.

CHAVEZ, C. J., and MOISE and COMPTON, JJ., concur.

NOBLE, J., dissenting.

NOBLE, Justice (dissenting).

In my view the majority have not only ignored an express mandate of the legislature, but have in the guise of judicial construction rewritten an important part of the workmen's compensation law to accomplish what the majority of this court believe it should have said.

Section 59–10–18.4, N.M.S.A.1953, expressly limits compensation awards for injuries to specific body members to that specified in the schedule not only for the loss or loss of use of the specific member, but also specifically limits an award for all disability resulting from such injury to a body member to the scheduled amount. The majority opinion makes it clear that the injury sustained by the workman was limited to the right leg. It is also made clear that disability extending beyond the specific body member for which they would allow additional compensation resulted solely from the injury to the leg. The statute thus limits recovery for such resulting disability to the scheduled amount. My interpretation of this statute is fully set forth in the dissent to Webb v. Hamilton, 78 N.M. 647, 436 P.2d 507, and Baker

v. Shufflebarger & Associates, Inc., 78 N.M. 642, 436 P.2d 502, both filed January 22, 1968.

For the reasons given therein, I dissent.