624 P.2d 1025

**Richard PEREZ, Plaintiff-Appellee,**

**v.**

**INTERNATIONAL MINERALS AND CHEMICAL CORPORATION, Employer and Self-Insurer, Defendant-Appellant.**

**No. 4728.**

Court of Appeals of New Mexico.

Feb. 3, 1981.

B. R. Baldock, Michael T. Worley, Sanders, Bruin & Baldock, P. A., Roswell, for defendant-appellant.

Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Plaintiff is an underground miner employed by defendant. Twelve and one-half months after suffering an accidental injury in the course of his employment, he returned to work. Thereafter, defendant did not pay plaintiff workmen's compensation benefits. Suit was filed. After trial was had, the trial court awarded plaintiff $22.92 per week based upon 20% disability. Defendant appeals. We affirm.

### A. *Inexcusable delay is not favored.*

Before a discussion on the issues raised by defendant, it is important to stress the seriousness of inexcusable delay in obtaining a hearing in a workmen's compensation case. Section 52–1–35(A), N.M.S.A.1978 reads:

When a workmen's compensation claim is at issue, the judge of the district court shall advance the cause on the court's calendar and dispose of the case as promptly as possible. The trial shall be conducted in a summary manner as far as possible.

Over half century ago, in *Gonzales v. Chino Copper Co.*, 29 N.M. 228, 232, 222 P. 903 (1924), Justice Bratton told the bench and bar to keep in mind that one theory upon which Workmen's Compensation Acts were passed was "to provide a speedy and inexpensive method by which such compensation might be made to such employees * * * * "

Plaintiff's complaint was filed December 2, 1978. Trial was held February 5, 1980, almost 15 months later. Nothing appears of record to justify this unreasonable delay.

Defendant's answer was filed January 12, 1979, the date at which this case was at issue. It was set for trial September 27, 1979, almost 9 months thereafter. Plaintiff, with concurrence of defendant, moved for a continuance pending the development of further medical testimony. The trial date was vacated. On November 26, 1979, almost 11 months after the case was at issue, defendant filed an affidavit of disqualification of a district judge even though "The affidavit of disqualification shall be filed within ten days after the cause is at issue * * * * " Section 38–3–10, N.M.S.A. 1978. On December 3, 1979, the substituted district judge set the case for trial on February 5, 1980. On December 14, 1979, defendant moved to undertake discovery proceedings and on December 19, 1979, both parties were granted this opportunity with an innocuous WHEREFORE clause added thereto. On January 15 and February 2, 1980, the depositions of plaintiff's doctors were taken. Trial was had February 5, 1980.

██ This Court has often said that it has no sympathy for opposing lawyers who let a case sleep in their files. *Medina v. Wicked Wick Candle Co.*, 91 N.M. 522, 577 P.2d 420 (Ct.App.1977). Delay violates the law and the spirit of the Workmen's Compensation Act. Regardless of the conduct of lawyers in the preparation of cases for trial, it is mandatory, when the claim is at issue, that the district judge "shall advance the cause * * * and dispose of the case as promptly as possible." Over three years have now passed since plaintiff returned to work on January 3, 1978, without payment of compensation benefits. Claimants and employers should not suffer an affront by such delay. Both parties are entitled to a prompt disposition of the case.

██ A district judge is not made aware of the date the claim is at issue. Each district court should adopt a rule, that in workmen's compensation cases, after an answer is filed and the cause is at issue, opposing lawyers shall notify the district judge in writing with a copy thereof filed in the clerk's office, requesting the judge to "advance the cause on the court's calendar and dispose of the case as promptly as possible" pursuant to § 52–1–35(A). Then, the burden of accomplishing the purpose of the Workmen's Compensation Act rests with the district judge.

B. *There is substantial evidence to support the court's findings on the "double over" shift.*

This is a "double over" shift case. A "double over" means that, whenever requested by an employer, a workman on a regular 8 hour shift will remain on the job for an additional eight hours.

Defendant claims that the following findings of fact on the "double over" shift were not supported by substantial evidence.

\* \* \* \* \* \*

(8) One of the duties required of the Plaintiff in the course of his employment is to "double over" or remain on the job for an additional eight (8) hour shift whenever requested by the Defendant-Employer and Plaintiff has been unable to "double over" because the pain which Plaintiff is experiencing at the end of the normal eight (8) hour shift is so great that he cannot continue to perform the normal duties required of him in his employment.

(9) Plaintiff's doctor has ordered Plaintiff not to "double over" and Defendant-Employer was aware of such orders by Plaintiff's doctor, however, Plaintiff's employer has on at least two previous occasions ordered Plaintiff to "double over" and Plaintiff has been required to refuse because he was unable to work any longer than the eight (8) hours which he had worked and on one of these occasions Plaintiff was suspended from work without pay for a period of three (3) days because of such refusal to "double over" on part of the Plaintiff.

(10) That the Plaintiff's condition at the time of the trial is one that has not stabilized and although it could get better, it is medically probable that it will deteriorate.

\*　　\*　　\*　　\*　　\*　　\*

(12) As a result of Plaintiff's accidental injury which occurred on December 15, 1976, he has suffered a partial disability to the body as a whole in the amount of 20% which has continued from January 3, 1978 to the date of trial.

On December 15, 1976, plaintiff suffered a fractured pelvis and was paid compensation benefits up through January 3, 1978, a period of 12½ months. On January 3, 1978, plaintiff returned to work at the same job classification as a grade 9 operator. A grade 9 operator is a production hand who can operate every piece of equipment in the mine such as a powder loading machine, roof bolter, undercutter and ram car. Plaintiff received the same or a higher wage than that he earned at the time of the injury. He was able to perform the duties required of him during the regular 8 hour shift with pain which increased in intensity. He was unable to do the "double over." He refused to do the "double over" shift because he was not physically able and was ordered by his orthopedic surgeon not to do so. He was advised to get sedentary work; that he was harming himself and within a year or two he would have to stop working. In the opinion of the surgeon, plaintiff was totally and permanently disabled.

Plaintiff's wife rubbed his legs and lower back every day. Plaintiff had to do the work assigned or be discharged, so he did perform the regular 8 hour shift in pain. Three foremen of defendant described plaintiff as a good workman, qualified, above average, and one of the best workmen in the mine. On one occasion when plaintiff was suspended from work for refusing to do a "double over" shift, defendant said, "Well, let's just wait and see how this lawsuit comes out before we make a decision." When the judgment was rendered, defendant appealed. Up to the time of trial, plaintiff performed his duties in the regular 8 hour shift, but he was unable to work as well or produce as much as he did before the accidental injury.

Defendant opens its first point with the statement that "The trial record provides no substantial evidence that would support the above listed findings." We disagree. Innumerable times we have stated a fundamental rule of which the defendant is aware. We must view the evidence, together with all inferences reasonably drawn therefrom, in the light most favorable to support the trial court's findings. In the customary fashion, defendant did not set forth *all of the evidence most favorable to plaintiff.* Defendant relied primarily on the testimony of its own orthopedic surgeon and its foremen who supervised plaintiff. Only excerpts from the testimony of plaintiff and his witnesses were quoted. Rarely do we find "all of the evidence" rule complied with.

We have also stated innumerable times that the spirit of the Workmen's Compensation Act flows in the direction of the workman and toward his protection. The employer should not seek technical and circuitous routes to avoid its responsibilities. The trial court, not this Court, has the final say about the facts presented by the parties. It must determine the facts from what it sees and hears, from the gestures and other conduct of the testifying witnesses as well as their words. What the court thinks about the facts is all that matters. We repeat the established rule quoted by defendant.

* * * We will not weigh the evidence or determine the credibility of witnesses * * The trier of facts is the sole judge of the credibility of witnesses and the weight to be given their testimony.

 We have often commended workmen who want to work, who do not play the part of Rip Van Winkle. We support a workman who continues in his employment or obtains other employment despite his disability and wage increase, especially so where the employer knows of his physical condition. An employer is entitled to subject a workman to observation during his work period, and, apart from the work period, subject a workman to surveillance by a private investigator. We do not seek to protect a workman who wrongs an employer. If a workman dawdles or falsely represents his disability, he can be tested every six months during the compensation period. Section 52–1–56. If a workman, through voluntary conduct unconnected with injury, takes himself out of the labor market, or, if after resuming employment, he is fired for misconduct, the employer is protected under the Workmen's Compensation Act.

 Rarely should an appeal be taken by a workman or employer based upon a lack of substantial evidence to support the findings. For an exception see *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.1979). All of the rules affecting an appeal have been explicitly set forth in unmistakable language in *Aranda*; *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178 (Ct. App.1978), Sutin, J., specially concurring; *Casaus v. Levi Strauss & Co.*, 90 N.M. 558, 566 P.2d 107 (Ct.App.1977); *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.1977), Sutin, J., specially concurring; *Weiss v. Hanes Mfg. Co.*, 90 N.M. 683, 568 P.2d 209 (Ct.App.1977); *Medina, supra; Medina v. Zia Company*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975).

 We reiterate and emphasize what has been said to avoid useless appeals *in workmen's compensation cases based on the substantial evidence rule.* A workman or employer must convince the trial court, not this Court, that the evidence presented supports the righteousness of the claim or defense. There was substantial evidence to support the trial court's findings on the "double over" shift.

**C.** *The trial court's determination that plaintiff was 20% partially disabled was not erroneous.*

Section 52–1–25, N.M.S.A.1978, defines partial disability:

"[P]artial disability" means a condition whereby a workman, by reason of injury * * * is unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage-extent to perform any work for which he is fitted * * * *

* * * * * *

Defendant attempts to circumvent partial disability by reference to two findings:

6. That Plaintiff has returned to the same job classification at the same or higher wage as he was earning at the time of the injury.

7. Plaintiff is capable of performing the duties normally required of him during a regular eight (8) hour shift [the remainder of the finding was omitted] notwithstanding the fact that he is performing these duties while experiencing pain and such pain has increased in intensity since January 3, 1978, and by reason of the pain which Plaintiff does suffer as a result of the injuries sustained by him as a result of the injury, *Plaintiff is required to take rest breaks at every opportunity and is unable [to] voluntarily assist or help out other employees which assistance he could and did perform prior to the accident.* [Emphasis added.]

Defendant claims that plaintiff's inability to work a "double over" shift should not be considered in determining plaintiff's disability. The reason therefor appears to be a quotation from *Aranda* that "The primary purpose of the Workmen's Compensation Act is to keep an injured workman and his family at least minimally secure financial-

ly." [93 N.M. 416, 600 P.2d 1202.] The "double over" shift was not ordered by defendant to secure plaintiff. Defendant avoided presenting any testimony relative to the "double over" shift and its relationship to the work of an employee at the mine. We assume that plaintiff was ordered to do the "double over" shift whenever defendant's production demanded it.

It is now established that the primary test for disability is the capacity to perform work. *Medina, supra.* An additional 8 hour shift is certainly work to be performed. We do know that plaintiff was totally unable to perform the "double over" and was temporarily suspended from work for failure to so perform. We do view the "double over" as a factor to consider in the determination of plaintiff's disability. If a workman is assigned some overtime work occasionally and is unable to perform, he may not be partially disabled. But a workman assigned a "double over" on one or more days automatically makes this definitely scheduled shift a part of the regularly assigned work. The shift is created by the employer, not the workman. It is created due to increased production. It avoids the employment of an additional workman temporarily. *This method of operation inheres to the employer's benefit.* In other words, the employer profits by the "double over" of a workman who is needed to meet the demands of business. A workman able to perform his regular assigned work, yet unable to perform the "double over," is partially disabled to some percentage.

Defendant relies on *Carrington v. Consolidated Underwriters,* 230 La. 939, 89 So.2d 399 (1956); *McPhearson v. Hunt Lumber Co.,* 158 So.2d 430 (Ct.App.La.1963); and *Hoffman v. Industrial Commission,* 14 Ariz. App. 244, 482 P.2d 493 (1971). *Carrington* and *McPhearson* stand for the proposition that a workman who works overtime spasmodically is not entitled to have *overtime pay* included in computing compensation. We have held contrary, that including payments of the weekly wage for overtime was not erroneous. *Neeley v. Union Potash & Chemical Co.,* 47 N.M. 100, 137 P.2d 312

(1943). *Hoffman* contains a quotation which relates to diminished earning capacity. It holds that loss of income from outside endeavors may not be considered in determining earning capacity or loss of earning capacity for workmen's compensation purposes. None of these cases assist defendant.

We return to findings Nos. 6 and 7 made by the trial court. It determined that plaintiff returned to the same job classification at the same or higher wage and was able to perform the duties normally required of him during an 8 hour shift, except, as a result of his pain, plaintiff had to take rest breaks and was unable to assist other workmen on the job.

Defendant claims the court confused disability with impairment when it determined that plaintiff had suffered a *"partial disability to the body as a whole in the amount of 20% \* \* \*"*. This is erroneous, defendant says, because "disability must be related to the capacity to perform work rather than a disability to the body as a whole." We delete the phrase "to the body as a whole," to overcome this complaint. This technical error does not assist defendant.

The problem of "disability vs. impairment" has reached a state of utter confusion and should be unraveled.

The word "impairment," and phrases such as "physical impairment," "impairment of a physical function," "impairment of a body function," have never been placed in the Workmen's Compensation Act nor defined by any judicial opinion. To date, we do not know what "impairment" and the above phrases mean. It was suggested that the word "impairment" be dropped because the word "disability" as defined in the Act is the only basis upon which compensation benefits can be awarded. *Witcher v. Capitan Drilling Company,* 84 N.M. 369, 503 P.2d 652 (Ct.App.1972), Sutin, J., specially concurring. The majority opinion in *Witcher* suggested that, under § 52–1–43, the scheduled injury section, the word "disability" meant "physical impairment." Five years later, all cases, to the extent they conflict with *Witcher,* were specifically

overruled. *Am. Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977). *Am. Tank* said:

> If one suffers a scheduled injury which causes a physical impairment but does not create disability, § 59–10–18.4, *supra*, will apply. When the impairment amounts to a disability, §§ 59–10–18.2 and 59–10–18.3 *supra* are properly invoked. [Id. 515.]

In other words, the scheduled injury section is one of "physical impairment," even though the scheduled injury section, § 52–1–43(A) provides for payment "for disability . . . as provided in § 52–1–41, N.M.S.A. 1978." Under *Am. Tank*, § 52–1–43(A) entitled "Compensation benefits; total disability," means payment for physical impairment as provided in § 52–1–41. What is meant by "physical impairment"?

Under *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199, 1201 (1980), as well as *Tafoya v. Leonard Tire Co., Inc.*, 94 N.M. 716, 616 P.2d 429 (Ct.App. 1980), and *Willcox v. United Nuclear Homestake Sapin Co.*, 83 N.M. 73, 488 P.2d 123 (Ct.App.1971), it has been held that "impairment of physical function is not enough to justify an award" provided by either §§ 52–1–24 or 52–1–25, and that " '[p]hysical impairment' does not automatically equate with 'disability'."

What is meant by "impairment of a physical function" and when can "physical impairment equate with disability"?

*Glover v. Sherman Power Tongs*, 94 N.M. 587, 613 P.2d 729, 735 (Ct.App.1980), Sutin, J., concurring in the result, set forth the only definition of "physical impairment" noted to date:

> "Giving 'physical impairment' the ordinary meaning as used in common speech, the term denotes a defect or infirmity limiting or making useless a member or limb of the body . . . . "

Logic and common sense dictate that if a member or limb of a body is defective or infirm and creates a condition whereby a workman is wholly or partially unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly or partially unable to perform any work for which he is fitted, "physical impairment" equates with total or partial disability.

On the other hand, if a workman is able to perform his usual tasks, despite "a defect or infirmity limiting or making useless a member or limb of the body," the workman is physically impaired not functionally disabled, because we are not concerned with a workman's physical injury. We are concerned with capacity to work. *Medina, supra*. Therefore, nondisabling pain does not constitute a compensable injury. Neither does a psychiatric or mental impairment. *Gomez v. Hausman Corporation*, 83 N.M. 400, 492 P.2d 1263 (Ct.App.1971). A severe pain, however, which does disable a workman is a compensable injury. *Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct. App.1978). A workman may retain all of the normal bodily functions of his organs and still be so weak or be in such pain that he would be totally or partially disabled from retaining or obtaining remunerative employment.

We now return to the instant case. Plaintiff was capable of performing the duties normally required of him during a regular eight hour shift, but not a "double over" shift. In the 8 hour shift, due to pain in his lower back and legs plaintiff was required to take rest breaks. He was also unable to assist or help other workmen which he did prior to his accidental injury. Plaintiff testified that he did more than 100% of his work before he was injured, but now he was only putting out 60% of what he was capable of doing before he was injured. His experience helped a lot but his physical ability did not. Plaintiff believed he would not be able to continue in his present work for more than a year; that he would continue to work as long as he was able and would like to make it for another ten years to support his family. Instead of getting better, he was getting worse. He could not lift heavy "stuff," and was not turning out the production that he did before the injury.

The trial court did not confuse impairment with disability when it determined that plaintiff had suffered a partial disability of 20%. The determination was not erroneous.

D. *The trial court's concern about continuing jurisdiction is irrelevant to the conclusion reached.*

At the close of plaintiff's case, defendant moved that plaintiff's complaint be dismissed for failure of plaintiff to sustain the burden as to his disability. During argument, the court was concerned with whether jurisdiction would continue if he held that plaintiff suffered no disability. The court asked this question:

THE COURT: * * * And the thing I'm concerned about is if I make a finding that as of today he has no disability, does that bar all future claims for any compensation as a result of this injury?

MR. BALDOCK: I think it does.

MR. BLENDEN: I'm of the opinion it does, too, your Honor.

THE COURT: I am, too. * * *

At the close of the case, the court stated: * * * If you gentlemen can find any law to assist me regarding whether or not I can retain jurisdiction of this matter—notwithstanding, I find no disability at this time. I'd like whatever assistance you can give me on that law. ....

The record does not disclose any assistance given to the court.

Nevertheless, the court was then convinced that plaintiff's condition may get worse to the point when plaintiff could not perform his duties and it believed plaintiff made a *prima facie* case. The court said that it intended to retain jurisdiction even though it made a finding of no disability. To resolve the issue, the court made finding No. 10:

That the Plaintiff's condition at the time of the trial is one that has not stabilized and although it could get better, it is medically probable that it will deteriorate.

There was substantial evidence to support this finding.

Defendant speculates that if the court was aware of the fact that it had continuing jurisdiction, it would have found plaintiff to be non-disabled and would have denied plaintiff compensation benefits. We disagree. The court swam with the plaintiff in the workmen's compensation river to protect plaintiff at the moment of his entry, or later, dependent upon the determination of plaintiff's medical condition. This is the spirit in which a court should view the evidence in what appeared to be a borderline case.

Plaintiff is awarded an attorney fee of $2,500.00 for services rendered in this appeal. Defendant shall pay the costs.

Affirmed.

HERNANDEZ, C. J., and WALTERS, J., concur.