647 P.2d 427

Steve ARAGON, Plaintiff-Appellant,

v.

MOUNTAIN STATES CONSTRUCTION COMPANY and Mountain States Mutual Casualty Company, its insuror, Defendants-Appellees.

No. 5252.

Court of Appeals of New Mexico.

Feb. 16, 1982.

Joseph David Camacho, Chris Lucero, Jr., James A. Thompson & Assoc., Albuquerque, for plaintiff-appellant.

Douglas R. Vadnais, Thomas L. Johnson, James A. Parker, Modrall, Sperling, Roehl, Harris & Sisk, P. A., Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Chief Judge.

Plaintiff was awarded benefits for loss or loss of use of one hand, dextrous member, under the scheduled injury section of the Workmen's Compensation Act, § 52–1–43, N.M.S.A.1978. He claims on appeal that because he is totally or partially disabled his award should not have been limited to a scheduled injury, and that the allowance of an attorney fee equal to the amount tendered before trial was error. Defendant cross-appeals on the attorney fee question and the trial court's assessment of costs in favor of the workman.

Plaintiff, by reason of a work-related accident, lost almost all of the middle and fourth fingers of his right hand, and suffered fracture injuries to his index and fifth finger. He did not achieve a complete union in the healing of the index finger fracture. The trial court's findings significant to this appeal were:

5. As a natural and direct result of his accidental injury, Plaintiff has suffered a 50% loss of use (impairment of function) of his right hand (dextrous member).

9. Plaintiff is totally disabled from doing the type of work that he was doing at the time of his injury on September 11, 1979.

10. Plaintiff is partially disabled from performing the usual tasks in the work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience.

11. The injury suffered by Plaintiff was limited to the dextrous hand with impairment to the hand and impairment to the dextrous arm to the shoulder, but the impairment to the arm is caused by atrophy to the arm which is the natural result of the injury to the hand.

14. Following the date of the accident and through August 26, 1980 (the healing period) Defendants paid Plaintiff the maximum workmen's compensation benefits of $186.38 per week for a total of $9,319.00.

15. On August 26, 1980 Defendants began tendering weekly compensation payments in the sum of $93.19 representing Plaintiff's 50% loss of use of his right hand, which payments were refused by Plaintiff.

17. On October 10, 1980, more than 30 days prior to the trial of this cause, Defendants extended to Plaintiff a tender of benefits which tender included the payment of all reasonable and necessary medical bills and charges related to the treatment of the injury, attorney's fees in the sum of $1,500 and scheduled injury benefits pursuant to Section 52–1–43(A)(7) N.M.S.A.1978, for 50% partial disability to the hand (right hand-dextrous member), said compensation to be paid for 125 weeks discounted to its present value.

18. Plaintiff refused to accept both the tender of benefits and offer of judgment.

20. Plaintiff's recovery is basically the same as contained in the offer of October 10, 1980, therefore attorney's fees are limited to the amounts set forth in that offer.

Concerning benefits recoverable, the court concluded that plaintiff's recovery was limited to the scheduled benefits for injury to the dextrous hand; that he was entitled to future medical, surgical and rehabilitation benefits under the Act, to all costs, and to a $1,500 attorney fee.

### 1. *Entitlement to total disability.*

■ If a workman injured in the course of his employment is (1) wholly unable to perform the usual tasks in the work he was performing at the time of his injury, *and* (2) is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience, he is totally disabled. Section 52–1–21, N.M.S.A.1978. Under Finding 9, Aragon met the first requisite of total disability. His own testimony, however, destroys a basis for arguing that he was unable to do any work for which he was fitted, even though he was unable to find such work. *Cf. Aranda v. Mississippi Chem. Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.1979). Finding 10 is supported by the evidence.

### 2. *Award of scheduled injury benefits.*

The real question is whether plaintiff was properly compensated by an award of scheduled injury benefits rather than partial disability. Section 52–1–42, N.M.S.A. 1978, which is the statute establishing partial disability benefits, reads: "For partial disability the workmen's compensation benefits *not specifically provided for in Section 52–1–43, N.M.S.A.1978*, shall be that percentage of the benefit payable for total disability * * *." (Our emphasis.) Section 52–1–43, *supra*, is the schedule of benefits payable for disability resulting from accidental injury to specific body members, including loss, or loss of use, of such members. Clearly, the opening language of § 52–1–42 classifies the benefits under § 52–1–43 as a specific type of partial disability for which a specific benefit has been provided.

Plaintiff's award was made under § 52–1–43 A(7): "one hand, dextrous member." Finding 10, however, recognized that in ad-dition to the loss of use of the dextrous hand, plaintiff suffered "impairment to the dextrous arm to the shoulder. . . caused by atrophy to the arm which is the natural result of the injury to the hand." That finding is supported by the evidence. The statute provides an award also for loss of use of "one arm at or near shoulder, dextrous member," and for loss of use of "one arm at elbow, dextrous member." There is no allowance provided for loss of use of the entire arm, dextrous member.

The cases on limitation or extension of scheduled injury disabilities can be described as inconsistent, at best, and as hopelessly irreconcilable, at worst. We review some of them:

(1) In *Newhoff v. Good Housekeeping, Inc.*, 94 N.M. 621, 614 P.2d 33 (Ct.App.1980), where the workman lost the sight of one eye, we held, rather straightforwardly, it would appear, that "[i]n order to obtain partial disability benefits and not be limited to scheduled injury benefits, there must be a separate and distinct impairment to other parts of the body in addition to the disability resulting from injury to the scheduled member." The "sole physical injury" of loss of an eye was stipulated by the parties in *Newhoff*. The award under the scheduled injury section of the Act was upheld.

(2) In *American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977), the workman was found totally disabled because the injury to his right thumb, index finger and the webbing between his thumb and finger rendered him totally unable to perform the work he had been doing or any other work for which he was fitted. The Supreme Court said in that case that its facts could "equally justify an award of total and permanent disability * * *, or an award for a scheduled injury." *Witcher v. Capitan Drilling Co.*, 84 N.M. 369, 503 P.2d 652 (Ct.App.1972), reached the same conclusion regarding the workman's entitlement to total disability benefits, rather than to the scheduled benefits, when injuries to both of claimant's hands made him unable to engage in his usual trade or any work he

228

was otherwise fitted to do. These two cases, and particularly *Witcher, supra*, pointed out that the total disability statute contains no language that would require a limitation to the scheduled injury section if the disability were not specifically provided for in that section and, consequently, could not be so limited.

(3) *Willcox v. United Nuclear Homestake Sapin Co.*, 83 N.M. 73, 488 P.2d 123 (Ct.App. 1971), held that an injury resulting in 30% "impairment" to the body as a whole was not a "partial disability" that would remove an injury to the leg between knee and ankle from the scheduled injury section.

(4) Plaintiff, in *Montoya v. Sanchez*, 79 N.M. 564, 446 P.2d 212 (1968), was awarded total disability "within the meaning" of the Act [§ 59–10–18.2, N.M.S.A.1953, 1967 Pocket Supp., identical (but for the amounts and length of time payable) to § 52–1–41A, N.M.S.A.1978], when the trial court found him unable to work because of injuries to his right foot and ankle and his left knee. The Supreme Court reversed and said plaintiff should have been granted two separate awards under the scheduled injury section, concentrating solely on the extent of bodily impairment and ignoring the issues of ability to perform some or any work as a result of those injuries.

(5) In *Yanez v. Skousen Constr. Co.*, 78 N.M. 756, 438 P.2d 166 (1968), the workman suffered a fracture of the femur. He developed, during healing, a bony overgrowth at the upper end of the femur which caused him considerable pain and restriction of motion. The trial court awarded benefits under the scheduled injury section for an injury to the leg; the Supreme Court reversed, holding that the overgrowth of the bone "involve[d] disability to *the hip* and *beyond the leg*," and "by virtue of such *impairment* [our emphasis] the plaintiff is unable to perform the type of work for which he is suited by training, experience, and education." (78 N.M. at 759, 438 P.2d 166.) The trial court was held to be in error in its "failure to conclude that disability was present, as a result of the injury, over and beyond that suffered to the leg * * *." *Id.*

(6) In the same year, *Webb v. Hamilton*, 78 N.M. 647, 436 P.2d 507 (1968), was decided. Injury to plaintiff's "nervous, mental and/or emotional system" followed from an injury to his right eye which ultimately resulted in serious diminution of eyesight in that eye. He had previously lost the sight of his left eye. The trial court awarded total permanent disability benefits; the company argued that the scheduled injury section should apply. The decision was affirmed, four members of the Supreme Court agreeing that "the provisions limiting awards to fixed periods for certain specified injuries or losses [the scheduled injury section] was not intended to prevent a larger recovery where, as here, a part of the body, in addition to the particular member or organ, is affected as a result of the accident and injury to the scheduled member."

(7) *Casados v. Montgomery Ward & Co.*, 78 N.M. 392, 432 P.2d 103 (1967), upheld a partial disability award against the "scheduled injury" challenge, finding that pain to the workman's back, leg and hips resulting from an injury to his foot and ankle, along with an inability to some extent to perform work he had been doing or was fitted to do, permitted the award of partial disability. The court declared that "the scheduled injury section of the statute ... is exclusive, unless there is evidence of a separate and distinct *impairment* of other parts of the body than the disability resulting *to the scheduled member.*" (Our emphasis.)

(8) The plaintiff suffered "a severe traumatic neurosis, sometimes * * * described as hysteria" as a result of and "directly related to" an injury causing a comminuted fracture of his left arm, in *Jensen v. United Perlite Corp.*, 76 N.M. 384, 415 P.2d 356 (1966). The court held that an award of total and permanent disability was proper, because the mental problem was not "a side effect of a fractured arm," and that the scheduled injury section thus did not govern the amount of benefits available.

(9) A workman who had pain in his foot, leg, right side and back resulting from a badly broken right foot was found by the trial court, in *Salome v. Eidal Mfg. Co.*, 75

N.M. 354, 404 P.2d 308 (1965), to have suffered partial permanent disability. The Supreme Court upheld the award saying that plaintiff's disability was "fairly traceable to the injury to his right foot."

(10) In *Sisneros v. Breese Industries, Inc.*, 73 N.M. 101, 385 P.2d 960 (1963), claimant had four fingers partially amputated by a punch-press machine, and suffered pain in his hand, arm and neck, and loss of strength in his arm. The court upheld the scheduled injury awards for partial loss of his fingers, saying:

It is inherent in the very nature of a physical injury of the magnitude suffered by claimant that pain and suffering will accompany it. Such pain and suffering may not be limited to the affected member alone, but spread to other parts of the body. Even so, it is still incident to the injury suffered and, as such, cannot be the basis for [partial disability] compensation as a separate claim.

(11) *Boggs v. D & L Constr. Co.*, 71 N.M. 502, 379 P.2d 788 (1963), like *Sisneros, supra*, concerned a workman who sustained a multiple fracture of his right knee; was found to be unable to perform any work other than as a carpenter or common laborer, which he could no longer do; suffered loss of sleep, pain in his leg and other parts of this body, experienced difficulty in walking and occasional falling, all as a result of the knee injury. The trial court found him totally disabled; the Supreme Court reversed, holding that the award should have been restricted to the specific member schedule.

Justice Moise specially concurred in *Eidel, supra*, expressing his opinion that he saw no difference between the facts of *Eidal* and the facts of *Boggs* or *Sisneros; supra*; nevertheless he was persuaded that the scheduled injury section did not provide the exclusive basis for recovery when the effect of the loss or loss of use of a member extended to other parts of the body. He thought *Boggs* and *Sisneros* should be overruled, if necessary, to sustain affirmance of the trial court's award of permanent partial disability.

More recently, our Supreme Court upheld a trial court award of 50% permanent partial disability to a workman who lost partial use of his right arm and hand because of "a traumatic blow to his right elbow." The case was decided on the plaintiff's inability to perform work he was doing at the time of the injury or, to some percentage extent, other work for which he was fitted "by reason of the various factors listed in the statute [§ 52–1–25, *supra*]." *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 372, 610 P.2d 1199, 1201 (1980).

Section 52–1–43 A(2) provides a scheduled injury benefit for "one arm at elbow, dextrous member." *Anaya* did not discuss whether the scheduled member section applied; it concentrated on the fact that "he [plaintiff] has lost partial use of his right arm and hand, that he will always have some amount of pain and that he will never be able to do the type of . . . [work] he did before his accident." *Id.*, at 371, 1200, 610 P.2d 1199. The facts of Anaya's injuries and its effects, it seems to us, are no different than the injury and attendant pain and limitations to the arm and neck, or pain to the leg and back, which were insufficient to remove the injury from the scheduled injury section for plaintiff in *Sisneros* and *Boggs, supra*—even though they, too, were unable to perform the work they were doing or some of the work they were fitted to do.

*Candelaria v. Hise Construction, et al*, No. 5080 (Ct.App.), decided by this court on December 1, 1981, and at present in the Supreme Court on a writ of certiorari, held that the scheduled injury section does not apply "if the loss or loss of use of a specific body member creates a condition whereby a workman is wholly or partially unable to perform the usual tasks in the work he was doing at the time of the accidental injury, and is wholly and partially unable to perform the work for which he is fitted." We think that portion of the decision disregards the provisions of subsections C and D of § 52–1–43 which allow for additional weeks of compensation when amputation of an arm or leg, or loss of both arms, legs, feet,

hands or eyes, or any two of them, lead to partial or total disability as therein defined. It would seem that the Act has provided for the automatic allowance of a partial or total disability award for those injuries, when the trial court finds there exist the circumstances set out in § 52–1–43 C and D.

 Regarding other injuries to specific body members, however, we believe the true method for deciding whether a claimant is entitled to either partial or total disability, instead of the scheduled injury benefit, should be to first determine whether loss or loss of use of a specific body member has caused a separate and distinct "disability" or "impairment" (see *Newhoff, Thompson, supra*), to a part or parts of the body other then the specific member injured. If it has, then there should be an inquiry whether the claimant is wholly or partially unable to do the work he was doing at the time of the injury or for which he would be fitted by reason of age, experience, education, training, physical and mental condition. If the requisite degree of inability to perform is shown, he should be awarded either partial or total disability rather than be limited to recovery under § 52–1–43, *supra*.

The narrow interpretations of the scheduled injury section expressed in *Sisneros* and *Boggs* regarding extended pain or impairment to "other parts of the body" being "incident to the injury suffered" and, consequently, unable to be considered under the tests for partial or total disability, added language to § 52–1–43, *supra*, that is not found in the legislative enactment, and they are aberrations in the line of cases we have herein reviewed which have dealt with this issue. All others either have upheld the scheduled injury award because it was the *sole* injury suffered, or upheld a partial or total disability award because the injury to the specific member affected some other part or parts of the body and rendered the claimant partially or totally unable to perform work.

In the instant case, the trial court found that plaintiff suffered "impairment to his arm * * * caused by atrophy," which was the result of the injury to his hand. It also found plaintiff totally unable to do the work he was doing when he was injured, and partially unable to do other work for which he was fitted. Those findings are supported in the evidence. The record discloses the trial court's frustration with the incompatible entitlement results reached in the various cases under similar facts. Justice Easley pinpointed the problem when he observed in *Anaya, supra*, that "[i]t is difficult for our trial judges to decide these cases under the best of circumstances," given the paucity of statutory guidelines and the hodgepodge of the cases.

 Under the trial court's Findings 9, 10, and 11, and accepting the clear distinctions of all of the cases other than *Sisneros* and *Boggs, supra*, we hold that plaintiff proved resulting "separate and distinct impairment" to other parts of his body, in addition to the scheduled member injury, to qualify him for entitlement to partial disability benefits.

### 3. Attorney's fees.

Since we have determined that plaintiff was entitled to partial disability benefits, the matter of attorney's fees for work at trial is remanded for further consideration by the trial court.

### 4. Costs.

Defendants protest the allowance of costs to plaintiff, arguing that plaintiff filed his bill of costs five days later than ordered by the court and, moreover, N.M.R.Civ.P. 68, N.M.S.A.1978, precludes recovery of costs when plaintiff declines an offer of judgment and fails to recover more than the offer after trial.

 The trial court rejected defendants' motion to strike the cost bill, thereby excusing any late filing of it. Our discussion above disposes of the Rule 68 argument.

 The matter is remanded to the trial court for a determination of the degree of partial disability to which plaintiff is entitled, and for adjustment of the award of

attorney's fees. Plaintiff's counsel is awarded $2,000 for services on appeal.

It is so ordered.

HENDLEY and DONNELLY, JJ., concur.