758 P.2d 787

**Marion L. HARRISON, Petitioner,**

v.

**ANIMAS VALLEY AUTO AND TRUCK REPAIR, Employer and Bituminous Casualty Insurance Company, Respondents.**

**No. 17717.**

Supreme Court of New Mexico.

Aug. 1, 1988.

Rehearing Denied Aug. 16, 1988.

Andrew L. Cameron, Denver, Colo., for petitioner.

Matthew P. Holt, Albuquerque, for respondents.

## OPINION

SOSA, Senior Justice.

Animas Valley Auto and Truck Repair, and Bituminous Casualty Corporation (Respondents), appealed the trial court's judgment in favor of Marion L. Harrison in this workers' compensation case. The court of appeals summarily reversed the judgment, 105 N.M. 425, 733 P.2d 873, and Harrison filed his petition for writ of certiorari on May 11, 1988. After reviewing the record below, the legal arguments advanced by both the court of appeals and counsel for the parties, we reverse the court of appeals and reinstate the judgment of the trial court.

FACTS

On September 23, 1983, Harrison was working on an automobile in his job as an auto repair mechanic when the vehicle slipped from one of the jackstands and crushed Harrison's right hand. In attempting to remove himself from the scene of the accident, Harrison stumbled over misplaced office furniture and fell through a glass partition, suffering, in the trial court's words, "severe and disabling injuries to his right arm, right wrist, and right hand."

The court further found that, "[A]s a result of the accidental injury, [Harrison] does not have the flexibility in his dominant wrist, lacks the physical strength in his arm and hand, suffers from numbness and lack of feeling and has incapacitating pain in his arm, wrist and hand * * * [and that] as a result of the accidental injury, [Harrison] is physically impaired in his right arm, right wrist, and right hand, and, by reason of his age, experience, education, training and mental and physical condition, is totally unable to perform his job as a mechanic."

From these facts the trial court deduced that Harrison was eighty percent permanent partially disabled and was therefore entitled to benefits for 600 weeks, as set forth in NMSA 1978, Section 52–1–42 (Orig. Pamp.). Respondents contended that the benefits for Harrison's injuries should have been computed, not according to Section 52–1–42, but according to NMSA 1978, Section 52–1–43 (Orig.Pamp.), which provides for benefits according to various schedules based on "disability resulting from an accidental injury to specific body members including the loss or loss of use thereof * * *." NMSA 1978, § 52–1–43 (Orig. Pamp.)

LEGAL ISSUES INVOLVED

In reversing the trial court, the court of appeals followed the general rule in New Mexico, namely, that where a worker suffers a partial disability, even though permanent, to specific body members, and there is no finding that this disability extends to additional impairment of *non*-scheduled parts of the body, compensation must be limited to that provided by NMSA 1978, Section 52–1–43, rather than to that provided by NMSA 1978, Section 52–1–42. *Casados v. Montgomery Ward & Co.*, 78 N.M. 392, 432 P.2d 103 (1967).

We start our analysis by acknowledging the summary of the state of the law on this issue, written by (then) Chief Judge (now Justice) Walters, in *Aragon v. Mountain States Construction Co.*, 98 N.M. 225, 647 P.2d 427 (Ct.App.) *rev'd on other grounds*, 98 N.M. 194, 647 P.2d 396 (1982): "The cases on limitation or extension of scheduled injury disabilities can be described as inconsistent, at best, and as hopelessly irreconcilable, at worst." *Id.* at 227, 647 P.2d at 429. After reviewing the cases on this question, including *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980), the court in *Aragon v. Mountain States Construction Co.* arrived at the following two-pronged test "for deciding whether a claimant is entitled to either partial or total disability, instead of the scheduled injury benefit." *Aragon*, 98 N.M. at 230, 647 P.2d at 432.

The first prong of the test devised by the court in *Aragon* involves determining "whether loss or loss of use of a specific body member has caused a separate and distinct 'disability' or 'impairment' to a part or parts of the body other then [sic] the specific member injured." *Id.* (citations omitted). Under the standard for determining impairment as set forth in *Anaya v. New Mexico Steel Erectors, Inc.*, and enunciated as the second prong in *Aragon*, "[A] workman is disabled if he cannot perform *some or all of the work* for which he is fitted by reason of the various factors listed in the statute * * *. If Anaya is unable to perform some of the work for which he is fitted, then he is disabled." *Anaya*, 94 N.M. at 372–73, 610 P.2d at 1201–02 (emphasis in original). In the case before us the trial court found that Harrison was unable to perform eighty percent of the work for which he is fitted.

The crucial question is whether Harrison's injuries extended to a part or parts of his body other than the specific members injured. While the trial court did not state in so many words the linkage between Harrison's injuries to specific body members (hand, wrist and elbow), and impairment to other parts of his body, we find that it is implicit in the record that the trial court understood Harrison's injuries to be extended beyond the specific confines of his hand, wrist and elbow. In particular, in its judgment, the trial court ordered respondents to provide payment for ongoing "medical, hospital, physical therapy, psychological therapy and prosthetic services that are reasonable and necessary for [Harrison's] treatment * * *." In short, the

trial court found that Harrison's injuries were to the *whole man* and not simply to his hand, wrist and elbow. It is obvious, for instance, that Harrison would not require psychological therapy for his hand, wrist and elbow, but for other injuries to his person sustained as a result of the accident.

Consequently, the trial court did not err in basing its award on NMSA 1978, Section 52–1–42, rather than on the more narrowly focused Section 52–1–43. The trial court went forward, under the two-prong test enunciated in *Aragon,* to find the degree of disability which Harrison had suffered. The trial court set this degree of disability which Harrison had suffered. The trial court set this degree of disability at eighty percent, and we can find nothing in the record to contravene the court's finding. We hold, therefore, that Harrison proved "separate and distinct impairment" to other parts of his body in addition to the scheduled member injuries, and that he is entitled to partial disability benefits and attorney's fees as defined by the trial court in its judgment of November 30, 1987.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and
STOWERS and WALTERS, JJ., concur.

RICHARD E. RANSOM, J., specially concurring.

RANSOM, Justice, specially concurring.

A worker who suffers an injury to a scheduled member of his body is limited to compensation under the scheduled injury provisions of the Worker's Compensation Act, unless that injury renders him totally disabled as a whole. *Hise Constr. v. Candelaria,* 98 N.M. 759, 652 P.2d 1210 (1982). However, the scheduled injury provisions are not exclusive if, in addition to impairment of the scheduled member, there is separate and distinct impairment to other parts of the body with resulting partial disability as a whole. *Id.*

Here, the worker was not totally disabled. Therefore, the judgment must be based upon the scheduled injury unless there is separate and distinct impairment to other parts of the body. On this crucial issue, the majority states that the trial court found the worker's injuries were to the whole man and not simply to his hand, wrist and elbow. I agree. I do not agree, however, that recitation in the judgment that psychological therapy is a service to be provided if reasonable and necessary constitutes either a finding of a psychological impairment or of necessity for psychological therapy. What I find persuasive is that the court specifically found that the worker had "incapacitating pain in his arm, wrist and right hand." "Incapacitating pain" is a disability as a whole and not the type of impairment for which compensation is scheduled when loss or loss of use of a specific body member results from an accidental injury. See discussion of "disability vs. impairment" in *Perez v. International Minerals and Chem. Corp.,* 95 N.M. 628, 634–35, 624 P.2d 1025, 1031–32 (Ct.App.), *cert. denied,* 95 N.M. 669, 625 P.2d 1186 (1981).

Incapacitating pain is an impairment related to the central nervous system. Cases from other jurisdictions recognize that incapacitating pain is separate and distinct from the loss or loss of use of the specific body member which was injured. *See Gold Kist, Inc. v. Casey,* 495 So.2d 1129 (Ala. App.1986); *Southern Farm Bureau Casualty Ins. Co. v. Aguirre,* 690 S.W.2d 672 (Tex.Ct.App.1985). Cases to the contrary either were decided before the distinction was fully developed between impairment of the scheduled member and impairment to other parts of the body as a result of injury to the scheduled member, or were decided on the basis of pain that was not incapacitating and was no more than normally results from a specific injury. *See Sisneros v. Breese Indus., Inc.,* 73 N.M. 101, 385 P.2d 960 (1963) (regarding machine press accident to worker's hand, pain that spread to other parts of the body was still incident to the injury suffered and could not be the basis for partial disability to the body as a whole); and *Lee v. United States Fidelity & Guar. Co.,* 66 N.M. 351, 348 P.2d 271 (1960) (cabinet maker not able to work out-

side in cold weather because scheduled injury to thumb and index finger sensitive to cold).

Consequently, the court of appeals erred in reversing the trial court's award of worker's compensation benefits under Section 52-1-42 (partial disability as a whole) and in remanding for an award of benefits under Section 52-1-43 (loss or loss of use of specific body members).